**CONSOLIDATED RAIL CORPORATION,
Plaintiff,**

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant.**

**Civ. A. No. 84–2364.**

United States District Court,
E.D. Pennsylvania.,

Aug. 20, 1984.

Laurence Z. Shiekman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., Fred L. Woodworth, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This is a declaratory judgment action brought by Consolidated Rail Corporation (Conrail) against Grand Trunk Western Railroad Company (Grand Trunk) concerning Conrail's rate-making activities. One day after this action was filed, Grand Trunk brought suit against Conrail in the United States District Court for the Eastern District of Michigan alleging Conrail's same rate-making activities at issue in the present action violate Section 2 of the Sherman Act, 15 U.S.C. § 2. This posture has given rise to the motions presently pending: 1) Grand Trunk's motion to dismiss due to the pendency of the Michigan action; 2) Grand Trunk's motion to dismiss for lack of personal jurisdiction; 3) Grand Trunk's motion to transfer under 28 U.S.C. § 1404(a); and 4) Conrail's motion to enjoin Grand Trunk from further proceedings in the Michigan action. For the reasons that follow, Grand Trunk's motions to dismiss for lack of personal jurisdiction and to transfer, as well as Conrail's motion to enjoin, will be denied. However, Grand Trunk's motion to dismiss due to the pendency of the Michigan action will be granted.

### I. *Facts*

The genesis of the present controversy is an agreement entered into by Conrail and Grand Trunk in December, 1975. In this agreement, Conrail stated it would file tariffs which adopted the joint rates and routes of the bankrupt railroads it succeeded pursuant to the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. § 701, *et seq.* The parties also agreed "to maintain and keep open with respect to each other all routes and channels of trade via existing junctions and gateways, unless and until otherwise authorized by the Interstate Commerce Commission."

In October, 1982, Conrail announced its intention to file a rate tariff with the ICC which provided for the cancellation of certain rates with other carriers. This action prompted Grand Trunk to file a complaint for injunctive relief in the federal court for the Eastern District of Michigan on November 1, 1982. Grand Trunk alleged that the practical effect of Conrail's action was to force a cessation of operations on certain Grand Trunk routes in violation of Conrail's contractual agreement to keep all such routes open. It sought an order requiring Conrail to maintain and keep open all routes shared with Grand Trunk, as well as an order to have Conrail specifically perform its obligations under the 1975 agreement. After granting Grand Trunk's request for a temporary restraining order, the district court issued a preliminary injunction which prohibited Conrail from taking any action which would close the routes specified in the agreement and specifically directed Conrail to perform its obligations under the agreement. The Sixth Circuit reversed, stating the dispute was within the primary jurisdiction of the ICC because it involved an attempt to establish new rate

agreements between two railroads. *Detroit, Toledo and Ironton Railroad Co. v. Consolidated Rail Corp.*, 727 F.2d 1391 (6th Cir.1984), *rev'g* 563 F.Supp. 22 (E.D. Mich.1982). The district court then dissolved the injunction and dismissed the complaint, on the ground that no case or controversy existed because there was no disputed tariff on file. Grand Trunk has filed an appeal of this dismissal which is currently pending before the Sixth Circuit.

Subsequently, on April 24, 1984, Conrail notified Grand Trunk of its intention, effective June 1, 1984, to cancel certain rates applicable to routes maintained by Conrail and used by Grand Trunk. Grand Trunk again took the position that this action would constitute a breach of the 1975 agreements and notified Conrail that unless the existing routes were maintained, it would commence suit alleging Conrail's actions were in violation of its contractual obligations and also constituted unlawful monopolization of trade and commerce under Section 2 of the Sherman Act.

On May 9, 1984, the parties met in Philadelphia in an effort to reach an amicable resolution of the disputes between them. At this meeting, representatives of Grand Trunk presented Conrail with a draft of an antitrust complaint containing allegations that Conrail had engaged in actions which monopolized or attempted to monopolize a portion of trade or commerce. Counsel expressed a desire to resolve the claims without commencing suit. Another meeting was held on May 15, 1984, in Detroit which was attended by representatives from both parties. This meeting lasted from approximately 9:30 a.m. until 12:00 p.m., at which time a Conrail representative offered to submit a settlement proposal that afternoon. Instead, the next communication received by Grand Trunk that day was a copy of the present complaint which had been served upon its sales representative in Philadelphia in the meanwhile.

In the complaint, Conrail has sought a declaration that its cancellation of the rates for certain routes is not in violation of the 1975 agreement (Count I); that the agreement is void because it constitutes an unreasonable restraint of trade by fixing rates for rail transportation services (Count II); that the agreement is not of perpetual duration and is terminable at will by either party (Count III); and that Conrail's actions do not constitute monopolization or attempted monopolization under Section 2 of the Sherman Act (Count IV). In Count V, Conrail seeks an injunction prohibiting Grand Trunk from continuing in its efforts to prevent Conrail from establishing new rates. Conrail alleges that through these efforts, Grand Trunk itself has attempted to restrain and monopolize trade and interstate commerce in violation of Sections 1 and 2 of the Sherman Act.

The next day, May 16, 1984, Grand Trunk filed its antitrust action against Conrail in the United States District Court for the Eastern District of Michigan. Grand Trunk alleged that Conrail's actions in connection with its attempts to alter the rate structure constituted monopolization and attempted monopolization in violation of Section 2 of the Sherman Act. Thus, Grand Trunk's Michigan complaint essentially parallels Count IV of Conrail's Philadelphia action. In contrast, however, the counts I–III of the Philadelphia complaint concern the 1975 agreement, which is not mentioned in Grand Trunk's Michigan complaint. Therefore, while there is some overlap between these two actions, facially there is no exact identity of issues or factual allegations.

## II. *Discussion*

▮▮▮▮ The bulk of Conrail's present complaint asserts claims under the Declaratory Judgment Act, 28 U.S.C. § 2201. While relief under this act is a matter committed to the discretion of the court, *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), this discretion may not be exercised until the court first determines whether the action is properly before it. Where objections based upon personal jurisdiction or venue have been raised, these issues must be resolved before reaching

any question of the exercise of discretion. *Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911 (3d Cir. 1976). Accordingly, I now turn to the jurisdictional and venue motions.

## A. *Personal Jurisdiction*

Grand Trunk is a corporation organized under the laws of the states of Michigan and Indiana with its principal place of business in Detroit, Michigan. It has no railroad lines or track nor does it operate any trains in the Commonwealth of Pennsylvania. Allegedly, its only connection with Pennsylvania is a sales office in Philadelphia where a representative is employed to solicit business for freight which is transported in states other than Pennsylvania. Grand Trunk alleges that an out-of-state railroad whose only activities consist of the maintenance of a sales solicitation office does not have sufficient contact with Pennsylvania to support a finding of *in personam* jurisdiction.

In support of this assertion, Grand Trunk cites a number of cases which have held mere solicitation without more does not confer jurisdiction over an out-of-state railroad. *See, e.g., Fraley v. Chesapeake and Ohio Railway Co.*, 294 F.Supp. 1193 (W.D. Pa.1969); *Vereen v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 209 F.Supp. 919 (E.D.Pa.1962); *Greenawalt v. Reading Co.*, 209 F.Supp. 954 (E.D.Pa. 1962). These courts have concluded that the unique nature of the railroad justifies this special rule.

> Unlike many manufacturing industries which do a nationwide business, and ship merchandise into the territories where they solicit business, a railroad does not by its operations enter the state where it merely solicits. On the contrary, its solicitation merely invites the customer to make use of a service which can only be enjoyed elsewhere ... It is also particularly desirable in the railroad industry, with its complex customs and practices, that a definite and clear-cut rule be adopted, susceptible of easy application, both by the parties themselves, their

counsel and the courts. The "solicitation without more" rule is of such a character.

*Fraley*, 294 F.Supp. at 1202.

I find it difficult, however, to reconcile these cases with the recent pronouncements by the Supreme Court adopting a more flexible approach towards personal jurisdiction. By maintaining an office in Philadelphia staffed by a sales agent in order to solicit business for itself, Grand Trunk has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *See also Bucks County Playhouse v. Bradshaw*, 577 F.Supp. 1203, 1207 (E.D.Pa.1983). Nonetheless, it is unnecessary to decide whether the "mere solicitation" rule retains validity today, since Grand Trunk has waived its right to assert this defense by not raising it at the time it filed its first motion to dismiss.

On May 25, 1984, Grand Trunk filed its motion to dismiss based upon the pendency of the Michigan action. Conrail's response to this motion was filed June 4, 1984. It was not until June 29, 1984, however, that Grand Trunk raised the personal jurisdiction issue. Under Fed.R.Civ.P. 12(b), a defendant may assert certain defenses by motion prior to filing an answer. This rule affords "an easy method for the presentation of defenses but at the same time prevent[s] their use for purposes of delay." 2A J. Lucas & J. Moore, *Moore's Federal Practice*, ¶ 12.02 (2d ed. 1984). To achieve this goal, Rule 12(g) requires a party who raises a defense by way of pre-answer motion consolidate all defenses in a single motion. Under Rule 12(h), if a party proceeds to challenge a complaint by motion and fails to raise the specific defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process in the motion, these defenses are waived and cannot sub-

sequently be raised. *Myers v. American Dental Association*, 695 F.2d 716, 720 (3d Cir.1982). Grand Trunk's failure to question personal jurisdiction when it filed its first motion to dismiss on May 25, 1984, constitutes a waiver and bars my present consideration of the issue.

■■■ Grand Trunk maintains that there has been no waiver because its first motion was not based upon one of the defenses enumerated in Rule 12(b)[1] and, in any event, the June 29 motion should be treated as an amendment to the May 25 motion. I am unpersuaded by either approach. The waiver provision of Rule 12(h) is not limited to pre-answer motions raising a 12(b) defense. Rather, it becomes effective upon the filing of any pre-answer motion to dismiss which may include, but is not limited to, those grounds enumerated under 12(b). *See Rauch v. Day and Night Manufacturing Corp.*, 576 F.2d 697 (6th Cir.1978); *Zelson v. Thomforde*, 412 F.2d 56 (3d Cir.1969) (motion to dismiss on statute of limitations grounds waives defense of personal jurisdiction). *But see Roller Derby Associates v. Seltzer*, 54 F.R.D. 556 (N.D.Ill.1972) (pre-answer motion may be amended prior to decision on motion). To accept Grand Trunk's argument, as well as its assertion that the second motion should be considered an amendment of the first, would run counter to the purpose behind Rule 12(h). This stringent waiver provision "reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation." *Myers v. American Dental Association*, 695 F.2d at 721. This purpose is reflected in the advisory committee notes accompanying Rule 12(h). "A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions." Fed.R.Civ.P. 12(h) advisory committee note. Accordingly, Grand Trunk's motion to dismiss for lack of personal jurisdiction must be denied.

**B. *Motion to Transfer***

■■■ Grand Trunk has also objected to venue and has filed a motion to transfer under 28 U.S.C. § 1404(a). It claims that this action ought to be transferred to Michigan because of the pendency of its antitrust action there and also, because it is actually the aggrieved party in this action, the litigation should take place in the forum most convenient to it. This motion must be denied. In *Plum Tree Inc. v. Stockmont*, 488 F.2d 754, 756–57 (3d Cir. 1973), the Third Circuit stated that the party seeking a transfer should support its motion with affidavits and other documentation which would establish that the interests of justice and convenience of the parties would be best served by transfer. Grand Trunk has provided no such documents in support of its motion. In contrast, Conrail has accompanied its memorandum in opposition with an affidavit of one of its representatives. This affidavit tends to show the inconvenience and hardship that Conrail might experience if this action were to be transferred. In sum, Grand Trunk has failed to carry its burden necessary to disturb Conrail's choice of forum and, therefore, its motion to transfer will be refused.

**C. *Motion to Dismiss Due to Michigan Action***

■■■ Having resolved the jurisdictional and venue motions, I may now address

---

1. Fed.R.Civ.P. 12(b) permits the following defenses to be raised by pre-answer motion: 1) lack of subject matter jurisdiction; 2) lack of personal jurisdiction; 3) improper venue; 4) insufficiency of process; 5) insufficiency of service of process; 6) failure to state a claim upon which relief can be granted; 7) failure to join a party under Rule 19. The basis for dismissal raised in Grand Trunk's May 25 motion, the pendency of the Michigan action, is analogous to specifically named 12(b) procedural defenses, such as improper venue, in that both challenge the forum of the litigation. Rule 12 requires such "technical objections, the basis of which should be apparent from the outset of the action," to be asserted before the litigation has moved forward. *Myers v. American Dental Association*, 695 F.2d at 721.

Grand Trunk's remaining motion to dismiss. It asserts that the Philadelphia declaratory judgment action must be dismissed because of the pendency of the antitrust action for damages in Michigan. Grand Trunk maintains that the only reason Conrail's complaint was first filed was due to its having misled Grand Trunk into believing it was engaging in good faith settlement discussions. In light of Conrail's unseemly conduct in winning the race to the courthouse when Grand Trunk did not even know there was a race, allowing this action to proceed would condone a misuse of the Declaratory Judgment Act. Accordingly, Grand Trunk's motion to dismiss will be granted.[2]

As previously stated, even where a court has jurisdiction under the Declaratory Judgment Act, it nonetheless retains the discretion to refuse to exercise that jurisdiction. *Brillhart v. Excess Insurance Co.*, 316 U.S. at 494, 62 S.Ct. at 1175. One factor of great importance in the exercise of this judicial discretion is the pendency of another action involving the same set of circumstances. *See* 6A J. Moore, *Moore's Federal Practice*, ¶ 57.08[6–1] (2d ed. 1983). Even though the "first-filed" case is often given priority, this factor assumes significantly less importance where the declaratory judgment action was filed in anticipation of another's action for damages. *See Mission Insurance Company v. Puritan Fashion Corp.*, 706 F.2d 599, 602 (5th Cir.1983); *Ven-Fuel Inc. v. Department of the Treasury*, 673 F.2d 1194 (11th Cir.1982); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir.1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968). That is precisely the situation presented here. Conrail was provided with a copy of a complaint which Grand Trunk was ready to file but which was held so the parties could engage in good faith settlement negotiations. After agreeing to return with a concrete proposal, Conrail headed for the courthouse. The only conclusion to be reached is that Conrail did so in anticipation of Grand Trunk's suit and in an effort to have precedence in time and in choice of forum.

In *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd mem.* 573 F.2d 1288 (2d Cir.1978), the court was presented with strikingly similar facts. Schneider had prepared an antitrust complaint and provided Columbia with a copy of it prior to filing. After the parties engaged in several weeks of negotiations, Columbia suddenly filed a declaratory judgment action in New York seeking a declaration that it had not violated the antitrust laws in its dealings with Schneider. Six days later, Schneider filed his antitrust complaint against Columbia in California. The court stayed the earlier-filed declaratory action, noting the deterrents for settlement of other lawsuits that would be generated by permitting Columbia to proceed with its action. *Id.* at 747–48. In addition to the inequitable conduct by Columbia, the court considered the questionable personal jurisdiction over Schneider in New York, the minimal time difference in filings, the broad venue choice afforded antitrust plaintiffs, *see* 15 U.S.C. §§ 15, 22, and the fact that the litigation in California was at a standstill.

These factors are present with equal or greater force in the action at bar. I have previously indicated my belief that personal jurisdiction is present, although I recognize the question to be close. Moreover, this case has also witnessed a race to the courthouse, under the guise of negotiation, but here the filing times were separated by only one day. Finally, unlike *Schneider*, the situation here includes substantial discovery already completed in Michigan regarding the 1975 agreement between the parties. This agreement was a central issue in the 1982 Michigan action and is also the subject of Counts I–III of Conrail's Philadelphia action. Even though the 1982 Michigan action is currently on appeal, the

---

**2.** Conrail's motion to enjoin Grand Trunk from proceeding with its Michigan action is based upon the pendency of this "first-filed" Philadelphia case. Given my dismissal of Conrail's action, its motion to enjoin must be denied.

parties can and should make use of this discovery, to the extent this issue will need to be adjudicated. *See infra* at 569–570.

In its opposition to Grand Trunk's motion and in support of its motion to enjoin the Michigan action because of the pendency of the Philadelphia suit, Conrail asserts this situation is controlled by *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941), *cert. denied*, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). In *Crosley*, Hazeltine, an owner of certain patents, sued Crosley in Ohio for patent infringement. Several months later, Crosley filed a declaratory action in Delaware for a declaration of the validity of the patent. Shortly thereafter, Hazeltine filed nine more suits in Ohio for patent infringement over patents already at issue in the Delaware action. The Delaware court refused to enjoin the parties in Ohio with regard to the patents at issue in Delaware. On appeal, the Third Circuit reversed and held the district court had abused its discretion in not enjoining the parties from proceeding with the second lawsuit in Ohio which raised the same legal and factual issues presented in Delaware. Judge Maris stated that, "The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Id.* at 930.

*Crosley* is readily distinguishable from the present case. Most importantly, neither party had engaged in the inequitable conduct practiced by Conrail here. Secondly, the issuance of an injunction in *Crosley* would have eliminated the need for nine suits, whereas a single suit is now pending in Michigan. Finally, the present case involves the broad venue provision for antitrust plaintiffs, which was not at issue in *Crosley*. Accordingly, I cannot give *Crosley* the conclusive effect urged by Conrail.

██ The mere pendency of another action for damages will not support a decision for a court to exercise its discretion to not allow declaratory relief unless the damage action will settle the issues raised in the declaratory action. 6A J. Moore, *Moore's Federal Practice*, ¶ 57.08[6–1] at 57–55 (2d ed. 1983). *Sears, Roebuck and Co. v. Zurich Insurance Co.*, 422 F.2d 587 (7th Cir.1970); *Maryland Casualty Co. v. Consumers Finance Service*, 101 F.2d 514 (3d Cir.1938). In the present case, the complaints appear at first glance to raise different issues for adjudication. However, when one pierces the pleadings and views the complaints in light of the surrounding circumstances, it is clear that both cases present the same issues for resolution. Therefore, because the entire controversy can be decided by the Michigan litigation, this action should be dismissed.

The parties agree that Count IV of the Philadelphia action presents the same issue and is based on the same facts as presented in the two counts of the Michigan case. In this count, Conrail seeks a declaration that its attempts to alter the rate structure do not violate the Sherman Act, whereas Grand Trunk asserts in Michigan that these same actions do constitute antitrust violations. In Count V of its complaint, Conrail contends that Grand Trunk's actions in resisting its efforts to change its rate structure violate Sections 1 and 2 of the Sherman Act. It would appear that this claim would more properly be asserted as a counterclaim to Grand Trunk's antitrust action. Moreover, if Grand Trunk succeeds in its antitrust claims, this issue would necessarily be decided. Thus, the issues presented in Counts IV and V of Conrail's action will be considered and decided in Grand Trunk's antitrust damage action. The only remaining concern is what effect, if any, should be given to Counts I–III of Conrail's complaint.

These counts involve the 1975 agreement between the parties regarding their respective duties and obligations as to certain routes and the rates to be charged for their use. Conrail seeks declarations that its actions do not constitute a breach of its contractual duties under this agreement (Count I); that the agreement is void for public policy reasons (Count II); and that,

in any event, the agreement is terminable at will by either party (Count III).

For all intents and purposes, this involves the same issue presented in the 1982 Michigan action which is currently on appeal. My reading of the Sixth Circuit's decision in that case, *Detroit, Toledo and Ironton Railroad Co. v. Consolidated Rail Corp.*, 727 F.2d 1391 (6th Cir.1984), leads me to conclude that I am without jurisdiction to render the declaration Conrail seeks. This issue is within the primary jurisdiction of the ICC since it involves "an effort by a rail carrier to be relieved of the terms of a contract with a second rail carrier which established joint rates for joint rates." *Id.* at 1392. Because of its unique expertise in this sensitive area of trade regulation, the ICC should have the opportunity to make this determination.

Therefore, claims for declaratory relief set forth in Counts I–III of Conrail's complaint are of no real effect in deciding whether the dispute should be litigated in Philadelphia or Detroit. These claims were already raised and rejected in Michigan. Given the Sixth Circuit's decision, I would likely provide them similar treatment here. Therefore, Conrail's complaint should properly be considered exclusive of Counts I–III. Viewed in this light, all issues raised in this action are also raised in Michigan. For this reason, and for all others discussed above, this action must be dismissed.

### ORDER

AND NOW, this 20th day of August, 1984, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED:

1) The motion to dismiss of Grand Trunk for lack of personal jurisdiction is denied;

2) The motion of Grand Trunk to transfer is denied;

3) The motion to enjoin of Consolidated Rail Corporation is denied;

4) The motion to dismiss of Grand Trunk because of the pendency of this Michigan action is granted.