**KMART CORPORATION, Plaintiff,**

v.

**KEY INDUSTRIES, INC., Defendant.**

No. 94–72763.

United States District Court, E.D. Michigan, Southern Division.

Dec. 14, 1994.

Ralph T. Rader, Bloomfield Hills, MI, for plaintiff.

Chester Davis, Detroit, MI, Donald Bayer, Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER

EDMUNDS, District Judge.

This matter has come before the court upon Defendant Key Industries, Inc., Motion to Dismiss or Transfer.

### I. Background

Plaintiff Kmart Corporation, a Michigan corporation, filed a complaint in this Court on July 19, 1994, for a declaratory judgment of trademark non-infringement pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). Key Industries, a Kansas corporation, filed a complaint on October 20, 1994 in the United States District Court for the District of Kansas asserting three counts against Kmart consisting of trademark pursuant to 15 U.S.C. § 1114, unfair competition pursuant to 15 U.S.C. § 1125(a), and Kansas common-law trademark infringement and unfair competition. Key contends that this Court should exercise its discretion and dismiss or transfer this action to the United States District Court for the District of Kansas because Kmart filed this complaint in this Court in anticipation of Key filing an infringement action in the federal district court in Kansas, and because Kmart misled Key that it would resolve the dispute without recourse to the courts. Alternatively, Key contends that this court should dismiss this action of lack of personal jurisdiction or because venue is improper.

### II. Analysis

The bulk of Key's argument concerns application of the Federal Declaratory Judgment Act. 28 U.S.C. § 2201(a). "While relief under this act is a matter committed to the discretion of the court, this discretion

may not be exercised until the court first determines whether the action is properly before it. Where objections based upon personal jurisdiction or venue have been raised, these issues must be resolved before reaching any questions of the exercise of discretion." *Consol. Rail Corp. v. Grand Trunk Western R. Co.*, 592 F.Supp. 562 (E.D.Pa. 1984).

## A. Personal Jurisdiction

 Key contends that this Court lacks personal jurisdiction over it. Thus the Court's initial inquiry is whether Key has sufficient contacts with the State of Michigan to satisfy both the requirements of the Michigan long-arm statute and the due process clause of the Constitution. The Court concludes that it Key is subject to this Court's personal jurisdiction in this case. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991). In addition to statutory criteria, due process requires that before a non-resident defendant may be subject to judgment in personam, that he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, the defendant's conduct must be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The burden of showing that personal jurisdiction exists is on the plaintiff. *Market/Media Research, Inc. v. Union–Tribune Publishing Co.*, 951 F.2d 102, 104 (6th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992).

 In Michigan there are two statutory bases of long-arm jurisdiction over corporations. The first, Mich.Comp.Laws Ann. § 600.711, confers "general" personal jurisdiction over a corporate defendant if it is incorporated in Michigan; has consented to jurisdiction; or carries on a continuous and systematic part of its general business within the state. *Id.* In cases of general jurisdiction, the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state without violating due process because the defendant's contacts with the forum state are "continuous and systematic." *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). The unrefuted affidavit of Key Industries' President, William K. Pollock, states that Key is a Kansas corporation; has its principal place of business in Kansas; is not registered as a foreign corporation in Michigan; maintains no registered agent nor registered address in Michigan; has no office, facilities, or other property located in Michigan, and has no employees, directors, or officers who reside in Michigan. Thus it is clear that there is no basis, statutory or constitutional, for the exercise of general personal jurisdiction over Key.

 The other statutory basis is "specific" or "limited" jurisdiction, found at Mich. Comp.Laws Ann. § 600.715. The exercise of this type of jurisdiction occurs where "a State exercises jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Specific personal jurisdiction may be exercised under the Michigan long-arm statute where the claim being litigated is one "arising out of" an act or acts creating any of five designated relationships. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990).

 One of those relationships—"[t]he transaction of any business within the state," Mich.Comp.Laws Ann. § 600.715(1)—applies to this case. Application of the state limited personal jurisdiction statute is a two-part test: the "arising out of" requirement, and the relationship component. *Lanier v. American Bd. of Endodontics*, 843 F.2d 901 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). The relationship at issue here—the "transaction of any business within the state"—is very broad. The word "any" includes "each" and "every" and comprehends even the "slight-

est" business transaction. *Flint Ink Corp. v. Brower,* 845 F.Supp. 404, 408 (E.D.Mich. 1994, quoting *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971)). The "only real limitation placed on this [long-arm] statute is the due process clause ..." *Kiefer v. May,* 46 Mich.App. 566, 571, 208 N.W.2d 539 (1973). The second prong of the test, the "arising out of" requirement, is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's contacts with the forum. *Id.* at 909.

■ Kmart has presented an unrefuted affidavit by its counsel stating that upon his investigation he determined that Key sold its work clothes having its trademarks thereon through at least seven retail and wholesale outlets in the Detroit area. The affidavit provides the addresses of all seven locations. This affidavit meets the statutory and due process requirements for the exercise of specific personal jurisdiction. Because its clothes were sold in Michigan, Key conducted the "slightest act of business" in Michigan. Further, the trademark infringement action arises out of those sales in Michigan because the clothes carried the Key mark. That Key's clothing is sold in seven different stores in the Detroit area shows that Key "purposely availed [itself] of the privilege of conducting business in Michigan." Therefore, this Court's exercise of personal jurisdiction over Key would not offend due process.

## B. Venue

■ Key further argues that this action should be dismissed on the ground that the Eastern District of Michigan is not a proper judicial district for this action. When subject matter jurisdiction is based on a federal question, federal venue is proper in:

(1) [A] judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in

which the action may other wise be brought.

28 U.S.C. § 1391(b). Moreover, a defendant corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Key is subject to personal jurisdiction in Michigan, venue is proper in this Court.

## C. Federal Declaratory Judgment Act

■ The Federal Declaratory Judgment Act provides that

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ...

28 U.S.C. § 2201(a). The Act provides only that courts "may" hear declaratory actions, rather than "shall" hear declaratory actions. Therefore, the granting of a declaratory judgment rests in the sound discretion of the trial court. *Grand Trunk R. Co. v. Consol. R. Co.,* 746 F.2d 323, 325 (6th Cir.1984). Nevertheless, this Court should apply the following general principles in determining whether a declaratory ruling is appropriate:

The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Id.* at 326. Specifically, the Court should consider five factors before entertaining a declaratory judgment action:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* In this case, Kmart's declaratory action will settle the infringement controversy at issue and will serve a useful purpose in clarifying the legal relations at issue. A resolution of the declaratory action will determine whether Kmart's key clothing infringes Key's trademarks, and it will either leave Kmart free to continue its promotion of Key clothing or will limit how it may proceed.

 The primary factor at issue here is factor three: whether the declaratory remedy is being used merely for the purpose of "procedural fencing." Key contends that Kmart filed this declaratory action in order to litigate this trademark dispute in this district, rather than in the District of Kansas. Absent special circumstances, when there are two competing lawsuits, the first filed has priority. *Plough, Inc. v. Allergan, Inc.*, 741 F.Supp. 144, 147 (W.D.Tenn.1990). This is true even if the first action is a declaratory action. *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994). "Exceptions, however, are not rare, and are made when justice or expediency requires." *Id.* For example, a suit brought purely in anticipation of a filing by the defendant in another forum should be dismissed. *Stack v. Whitney Nat'l Bank*, 789 F.Supp. 753, 756 (S.D.Miss.1991), *aff'd*, 958 F.2d 1078 (5th Cir.1992); *see also Tempco Elec. Heater Corp. v. Omega Engineering*, 819 F.2d 746, 750 (7th Cir.1987).

 Many courts have dismissed an earlier-filed declaratory action where a later-filed trademark infringement is pending in another district, where litigation has yet to proceed in either court, and where settlement negotiations were in progress. *E.g., Tempco*, 819 F.2d 746; *Capital Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350 (S.D.N.Y.1992); *Associated Mills, Inc. v. Regina Co., Inc.*, 675 F.Supp. 446 (N.D.Ill.1987); *Consol. Rail Corp. v. Grand Trunk Western R. Co.*, 592 F.Supp. 562. The critical issue appears to be whether the plaintiff in the earlier-filed declaratory action misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse and therefore choose the forum for the dispute. Courts balance two policies when deciding whether to exercise their discretion to dismiss an earlier-filed declaratory judgment action. Courts should give effect to the Federal Declaratory Judgment Act's policy of providing persons threatened with litigation a means to determine their rights. But the Act should not be applied to encourage would-be trademark plaintiffs to file suit rather than resolve their disputes amicably by providing the incentive of forum choice to file suit quickly.

In *Tempco*, 819 F.2d 746, the defendant, a Delaware corporation with its principal place of business in Connecticut, sent a letter to the plaintiff, an Illinois corporation, demanding that the plaintiff cease the allegedly infringing. The letter further demanded a response within ten days and threatened litigation if none was received. Having received no response, the defendant sent the plaintiff a letter eight days later. The following day, the plaintiff contacted the defendant and notified it that the plaintiff would not comply with the demand. That position was reiterated to the defendant five days later. The defendant stated to the plaintiff that it had no choice but to sue. The plaintiff subsequently filed a declaratory judgment action in Illinois. Four days later, the defendant filed an infringement action in Connecticut. The court dismissed the declaratory judgment action, holding that the declaratory action was filed merely for "procedural fencing" and securing choice of forum. *Id.* at 750.

*Tempco* was followed in district court cases where settlement negotiations were in progress. In *NSI Corp. v. Showco, Inc.*, 843 F.Supp. 642 (D.Or.1994), Showco's counsel sent a letter to NSI demanding that NSI cease and desist from using Showco's mark, threatening suit, but would prefer to settle the matter. NSI's counsel responded by saying he was investigating the matter. A week later Showco's counsel called NSI's

counsel to check the status of the matter, to which NSI's counsel responded that he would send a settlement proposal. Instead, NSI filed a declaratory judgment action in Oregon a day after it sent the settlement proposal, and served Showco with the complaint a month after that. A week later, Showco filed a damages action in Texas. The court dismissed the declaratory action, holding that NSI took unfair advantage of Showco by leading it to believe that it was negotiating in good faith and that the declaratory action was filed merely for the purpose of securing its own choice of forum for the dispute. *Id.* at 646.

But courts have refused to dismiss a declaratory action where the defendant sent the plaintiff a cease-and-desist letter and no settlement negotiations had taken place, *Plough, Inc. v. Allergan, Inc.*, 741 F.Supp. 144 (W.D.Tenn.1990), or where the plaintiff filed the declaratory action justifiably believing that further settlement negotiations would be fruitless, *Agridyne Technologies, Inc. v. W.R. Grace & Co.*, 863 F.Supp. 1522 (D.Utah 1994). In *Agridyne,* Grace was prepared to bring a patent infringement suit against Agridyne, but believed that the dispute could be resolved amicably because the parties were in the midst of merger negotiations. Agridyne filed a declaratory action when the parties' arrived at a point where their respective postures on a merger were still several million dollars apart and after Grace responded by stating that it would file a patent infringement suit within a week. Therefore, the court held that Agridyne was justified in believing that further negotiations were pointless and that granting preference to Grace's choice of forum as opposed to Agridyne's first filed preference would not promote the policy of encouraging negotiation and settlement.

■ This case is more like *Agridyne* than *Tempco* and *NSI.* Kmart justifiably believed that further negotiations were pointless. Key contends that settlement negotiations were in progress, but based on the written correspondence in this dispute, Kmart justifiably believed that Key would accept nothing short of total capitulation.

Counsel for Key first sent a letter to Kmart's general counsel April 12, 1994 demanding that "Kmart immediately cease and desist from all use of all marks containing the term KEY in connection with clothing." The letter further requested that Kmart respond within 30 days to confirm its intent to abide by Key's demands and that stated that failure to do so would be deemed a refusal to cease infringing activities. The letter stated in conclusion that "Key Industries sincerely desires to resolve this matter quickly and amicably ..." Kmart's general counsel responded in a letter dated May 3, 1994, disputing that any of Kmart's activities infringes Key's trademark. Counsel for Key responded to Kmart's arguments, and reiterated its demand that Kmart immediately cease and desist from infringing Key's trademark. Key's counsel sent a final letter to Kmart July 5, 1994 which read in part as follows:

> [O]ur client again requests that Kmart immediately cease and desist from all use of the KEY mark in connection with the sale of clothing. If we can obtain this commitment from your client immediately, then we believe we can amicably resolve this matter. However, if your client is unwilling to cease and desist from all use of the KEY mark in connection with clothing, please advise immediately.
>
> \* \* \* \* \* \*
>
> If Kmart is not prepared to cease and desist use of the KEY mark, then our client will have no other alternative then to proceed with appropriate action to protect its rights.

On July 19, 1994, Kmart filed this action. It sent a copy of the complaint to Key's counsel August 25, 1994. On the cover letter, counsel for Kmart stated that "[a]s we have discussed in the past, Kmart may be willing to settle on the grounds that it will limit its sale of products bearing the KEY ELEMENTS mark through stores owned by Kmart, with certain minor exceptions. It may also agree to negotiate in good faith to resolve any instances of likelihood of confusion."

Key argues that numerous telephone conversations led Key to believe that settlement negotiations were progressing and that there

was no need to file a complaint. Key asserts that on June 10, 1994—more than a month prior to the date on which Kmart filed this complaint—Kmart's counsel called Key's counsel and advised Key's counsel that Kmart wanted to resolve the matter quickly and avoid litigation, that Kmart was willing to modify its current use of the KEY mark in order to satisfy Key's concerns regarding Kmart's KEY mark, and that Kmart would consider other settlement possibilities, including a licensing arrangement. Finally, Kmart's counsel requested that Key provide him with items bearing Key's trademark as well as a list of all stores in Detroit where Key products bearing its trademark could be purchased. Key further contends that on August 5, 1994—after Kmart filed this complaint—Kmart's counsel advised Key's counsel over the telephone that Kmart was willing to limit the channels of trade for products bearing the KEY mark, and that he would send a letter to Key confirming Kmart's position. Instead, Kmart sent Key a copy of the complaint filed in this action.

The Court was not privy to these telephone conversations, however, and therefore cannot determine the tone with which Kmart's counsel discussed settlement. Therefore, the Court must rely heavily upon the written correspondence in this dispute. That correspondence, detailed above, indicates that Key would accept no settlement short of total capitulation. Based on the foregoing, the Court will not disturb the choice of forum of the party that filed the first complaint.

### III. Conclusion

Therefore, the Court hereby DENIES Defendant's Motion to Dismiss or Transfer.