**BAUSCH & LOMB INCORPORATED, Plaintiff,**

v.

**ALCIDE CORPORATION, Defendant.**

**No. CIV–87–1159T.**

United States District Court, W.D. New York.

Nov. 24, 1987.

Nixon, Hargrave, Devans & Doyle (William D. Eggers and Kathleen Tranelli, of counsel), Rochester, N.Y., for plaintiff.

Seed & Berry (Jeffrey B. Oster, of counsel), Seattle, Wash., and Harris, Beach, Wilcox, Rubin & Levey (James Hartman, of counsel), Rochester, N.Y., for defendant.

### DECISION AND ORDER

TELESCA, District Judge.

The plaintiff in this action, Bausch & Lomb Incorporated, is a major manufacturer of soft contact lenses and various cleaning and preparation solutions used in connection with soft contact lenses. The defendant, Alcide Corporation, is a manufacturer of disinfectant solutions used in the medical, agricultural, veterinary, automotive, and food industries. Bausch & Lomb filed this declaratory judgment action on September 3, 1987 seeking a declaration that the use of the trademark "ReNu" does not infringe upon Alcide's trademark "Ren-New." On September 9, 1987, Alcide filed an action in the District of Connecticut for trademark infringement alleging that Bausch & Lomb's use of the name ReNu on its soft contact lense disinfectant solution infringed upon Alcide's registered trademark "RenNew."

Bausch & Lomb has moved to enjoin Alcide from prosecuting the Connecticut action. Alcide has moved to have this action stayed or in the alternative, transferred to the District of Connecticut.

## BACKGROUND

In July of 1984, Alcide filed a trademark application for the mark "RenNew" for use on a disinfectant solution. In June of 1985, Alcide began marketing disinfectant solution for renal dialysis machines under the trademark "RenNew–D". Although the product had received the approval of the United States Food & Drug Administration, in June of 1986 Alcide learned of reports of the appearance of pinholes in the semipermeable membranes of the hemodialyzers. Alcide withdrew the product from the market in order to conduct further research with an aim toward returning the product to the market as soon as possible. Alcide contends that the RenNew hemodialysis disinfectant product will be back on the market in 1988. In November of 1986, the Patent and Trademark Office issued a registration for "RenNew" as a trademark for use identifying a "sporacide/disinfectant for hemodialyzers."

The parties are in dispute as to the extent to which Alcide uses the name RenNew for disinfectant solutions with uses other than renal dialysis. Alcide contends that it produces RenNew–M for its disinfectant solution for medical equipment and RenNew–A/C for its disinfectant solution for automobile air-conditioning systems. Bausch & Lomb has produced Alcide's 1987 *Technology Profile,* its 1987 Annual Report, an agreement between Alcide and Ford Motor Company for the marketing of Alcide's disinfectant for automotive air-conditioning systems. Bausch & Lomb contends that these documents reveal that Alcide is not currently using the name RenNew on any product.

Bausch & Lomb and Alcide have been parties for a number of years in ongoing discussions regarding Alcide's research and development of a contact lense disinfecting solution. In December of 1983, they entered into a confidential disclosure agreement whereby Alcide sent samples of its contact lense disinfecting solution to Bausch & Lomb for testing. In August of 1986, they entered into a formal agreement for Alcide to develop a contact lense disinfecting solution to be exclusively distributed by Bausch & Lomb. The contract called for payments by Bausch & Lomb at various stages of development and testing and for Bausch & Lomb to pay to Alcide a percentage of sales once the product is marketed. The agreement calls for the disinfectant to be marketed under Bausch & Lomb's name but also to contain the Alcide name. The agreement is silent as to either parties' use of the names ReNu or RenNew.

In December of 1986, Bausch & Lomb began marketing an enzymatic contact lense cleaning solution under the tradename "ReNu". The active ingredient in the disinfectant is the proteolytic enzyme subtilisin which removes protein buildup from contact lenses. It does not also disinfect the contact lense.

Alcide contacted Bausch & Lomb to express its concern over the use of "ReNu". Bausch & Lomb pointed out the fact that the Patent and Trademark Office classifies enzymatic cleaning solutions differently from disinfecting solutions and the unlikelihood of confusion between the retail contact lense market and the sale to hospitals of renal dialysis disinfecting solutions. Alcide assessed that it was not likely to get into the business of producing enzymatic cleaning solutions and, therefore, did not oppose further Bausch & Lomb's use of "ReNu" at that time.

In June of 1987, Bausch & Lomb introduced two new contact lense products under the tradename ReNu, a saline solution and a disinfecting solution. Alcide alleges that it knew of the proposed announcement in advance and that during May of 1987 it contacted Bausch & Lomb to protest the use of the name ReNu on the disinfecting solution. Alcide also alleges that on June 2, after Bausch & Lomb's announcement of the new product, it received at least four phone calls from stockbrokers inquiring whether the newly announced Bausch & Lomb disinfecting solution was an Alcide product.

In July and August of 1987, the parties engaged in a series of telephone calls, letter correspondence and at least one meeting regarding Bausch & Lomb's use of the

name "ReNu" on its disinfectant solution and Alcide's claim of infringement on its "RenNew" disinfectant solution. How to characterize this communication between the parties is an important issue going to the question of the good faith efforts of the parties to resolve this commercial dispute. Bausch & Lomb contends that it made clear to Alcide that it did not consider its use of the name "ReNu" to infringe upon their trademark and that it would not agree to pay any royalties to Alcide. Alcide contends that Bausch & Lomb had left the door open to consideration of further proposals for resolution of the dispute to be advanced by Alcide.

On August 28, 1987, Elliott J. Siff, President and Chief Executive Officer of Alcide, sent a letter to James E. Kanaley, Head of the Personal Products Division of Bausch & Lomb which stated, *inter alia,*

> Bob Abrahams has just received word from Jim Doyle informing us of your decision to do nothing further regarding the conflict of the above-referenced trademarks.... As we understand it, your ReNu disinfectant will be coming out shortly, and we must resolve our differences promptly. I sincerely hope that you will reconsider your position before the close of business on Thursday, September 3, 1987; otherwise Alcide Corporation will have no choice but to file a complaint seeking a preliminary injunction and other relief to protect its rights and its registered trademark RenNew Disinfectant.

On September 3, 1987, Bausch & Lomb filed the instant declaratory judgment action. Alcide filed its action in Connecticut for trademark infringement on September 9, 1987.

### DISCUSSION

█ Bausch & Lomb seeks a preliminary injunction enjoining Alcide from prosecuting the Connecticut action any further. Alcide seeks an order staying this action or in the alternative, transferring it to the District of Connecticut to be joined with the trademark infringement action it filed there.

Where an action is brought in one Federal District Court and a later action embracing the same issue is brought in another Federal Court, the first action has jurisdiction to enjoin the prosecution of the second action. *See, Coakley & Booth, Inc. v. Baltimore Contractors, Inc.,* 367 F.2d 151 (2d Cir.1966); *National Equipment Rental, Ltd. v. Fowler,* 287 F.2d 43 (2d Cir.1961).

*Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974).

This power to enjoin exists even when the first action is a declaratory judgment action and the second one is an action for damages for an alleged injury, as long as the declaratory judgment action "will serve a useful purpose of clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Ft. Howard Paper Company v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986) (quoting *E. Borchard, Declaratory Judgments,* 299 (2d Ed. 1941)).

█ Accordingly, the first issue to be determined is whether the Connecticut action is one "embracing the same issue" as the declaratory judgment brought in this Court. While the two actions need not be identical, *Meeropol v. Nizer, supra* at 235, any order to enjoin the prosecution of the second filed action or to stay or transfer this action must serve the fundamental purpose of "conservation of judicial resources and comprehensive disposition of litigation ..." *Kerotest Manufacturing Company v. C–O–Two Fire Equipment Company,* 342 U.S. 180, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).

Alcide raises two issues with regard to this question. First, they contend that the Connecticut State Law causes of action for dilution and other forms of unfair competition will not be resolved by determination of Bausch & Lomb's declaratory judgment action on the question of trademark infringement. This is correct, however, should I decide to exercise jurisdiction over the declaratory judgment action "defendants are free to enter a counterclaim re-

solving any 'uncertainty' or 'insecurity' they may feel remains between the parties." *Fort Howard Paper Company v. William D. Witter, Inc.*, 578 F.Supp. 301, 302–303 (S.D.N.Y. 1984).

Next, Alcide contends that this Court lacks jurisdiction because there is not an actual controversy regarding Bausch & Lomb's use of the name ReNu on its enzymatic cleaning solution or other contact lense products other than the disinfectant. The existence of Alcide's Connecticut lawsuit is, obviously, the strongest possible evidence that a controversy exists as to Bausch & Lomb's use of the name ReNu on its disinfectant solutions. Whether or not there exists a controversy as to Bausch & Lomb's use of the name ReNu on its other contact lense products remains to be seen, and is not the subject of any motion currently before this Court.

■ The conclusion that subject matter jurisdiction exists as to this declaratory judgment action does not resolve the question of whether or not this Court should exercise its jurisdiction. A declaratory judgment action is an exception to the general rule that a Federal Court must exercise the jurisdiction which is conferred upon it. *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). The determination of whether or not to exercise jurisdiction is left to the sound discretion of the district court. *Kerotest Manufacturing Company v. C–O–Two Fire Equipment Company, supra*, 342 U.S. 180, 72 S.Ct. 219 (1952).

■ Whether or not this Court should exercise jurisdiction over the declaratory judgment action depends upon whether, as Bausch & Lomb insists, priority should be given to the first-filed action or, as Alcide insists, the balance of conveniences and other special circumstances warrant finding an exception to the first-filed rule.

The general standard in this Circuit is that, as a principle of sound judicial administration, the first suit should have priority, "absent the showing of a balance of convenience in favor of the second action," *Remington Products Corp. v. American Aerovap, Ind.*, 192 F.2d 872, 873 (2d Cir.1951) ..., or unless there are special circumstances which justify giving priority to the second.

*William Gluckin and Company v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969) (citations omitted).

The issue of balancing the inconveniences is left to the sound discretion of the District Court. *William Gluckin and Company v. International Playtex, Id.; Kerotest Mfg. Co. v. C–O–Two Fire Equipment Company*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951). Bausch & Lomb has submitted a number of affidavits identifying a number of its employees who will need to be called as witnesses and documents which will need to be introduced, all of which are located in Rochester. Alcide has introduced affidavits identifying a number of its employees who will have to be called as witnesses and documents which will have to be introduced, all of which are located in Connecticut. "As for the convenience issue, both parties suffer, understandably, from tunnel vision." *Dow Jones & Company, Inc. v. Board of Trade of the City of Chicago*, 539 F.Supp. 190, 191 (S.D.N.Y. 1982). Although Bausch & Lomb is the distinctly larger corporation, both parties are national companies and the distance between Bridgeport, Connecticut and Rochester, New York is relatively small. If the balance of conveniences can be said to tip in favor of either party, it does so slightly in favor of Alcide, which because of the relatively small size of its management (a total of eight people) is likely to suffer more disruption to its business as a result of a trial away from its home district.

The second exception to the first-filed rule concerns the equitable question of "the parties dealings prior to instigation of litigation ...". *Creighton Omaha, etc. v. Lomas & Nettleton Company*, 486 F.Supp. 392 (D.Neb. 1980); *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y. 1977), *aff'd. memorandum*, 573 F.2d 1288 (2d Cir.1978), or whether either of them has engaged in forum shopping. *Motion Picture Laboratory v. McGregor & Werner*, 804 F.2d 16, 19 (2d

Cir.1986). Alcide has attempted to convey a picture of on-going negotiations concerning a licensing agreement for the use of the name "ReNu" and alleges that Bausch & Lomb engaged in "Pearl Harbor tactics" by filing suit for declaratory judgment before negotiations ended. Bausch & Lomb alleges that it had clearly indicated to Alcide that it would not accept a licensing agreement or payment of royalties for the use of the name "ReNu" and that there were no on-going negotiations. Bausch & Lomb accuses Alcide of attempting to "end run" this Court's jurisdiction by filing the second action in Connecticut rather than filing an answer in this action. Two things are apparent from the August 28, 1987 letter from Alcide CEO Elliott Siff: First, that Bausch & Lomb had clearly rejected Alcide's licensing agreement proposal, thus Siff's request for Bausch & Lomb to "reconsider" its position, second, that Bausch & Lomb knew of Alcide's intention to file an action if Bausch & Lomb did not reopen negotiations by September 3, 1987.

While there may not have been on-going negotiations, it is clear that the August 28, 1987 letter was a bona fide attempt to resolve the dispute outside of court. In their supplemental reply memorandum, Bausch & Lomb characterizes the situation on August 28 as one where "the swords of litigation were drawn on both sides ..." (Page 5). This statement reveals the error in Bausch & Lomb's position. On August 28, 1987 Alcide, the party alleging injury, advanced an offer to resolve the dispute without resorting to litigation. Thus it was inappropriate for Bausch & Lomb to "raise the sword of litigation" and seek a legal declaration of its rights, when other avenues for resolution of the dispute were open to it.

When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the latter filed action to proceed to judgment in the plaintiff's chosen forum. *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967). *Accord, Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977).

As Mr. Justice Brennan has observed, "the federal declaratory judgment action is not a prize to the winner of a race to the courthouses." *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, [694 n. 12], 27 L.Ed.2d 701 (1972) (Brennan, J. dissenting). *Factors, etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978).

Weighing the various factors to be considered, I conclude that the balance of conveniences tipped slightly in favor of Alcide and that Alcide was in good faith awaiting Bausch & Lomb's answer when this declaratory judgment action was filed. To allow this action to proceed would be to discourage such good faith effort to negotiate. Accordingly, Bausch & Lomb's motion to enjoin Alcide from prosecuting the Connecticut action is denied. Alcide's motion to transfer this action to the District of Connecticut is granted.

ALL OF THE ABOVE IS SO ORDERED.