**K & F MANUFACTURING CO. INC., Plaintiff,**

v.

**WESTERN LITHO PLATE &· SUPPLY COMPANY, Defendant.**

No. 3:93–CV–300RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 17, 1993.

Paul B. Hunt, David R. Melton, Barnes and Thornburg, South Bend, IN, for plaintiff.

Carmen M Piasecki, Nickle and Piasecki, South Bend, IN, J. Bennett Clark, Robert M. Evans, Senninger Powers Leavitt and Roedel, St. Louis, MO, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion of defendant Western Litho Plate & Supply Company ("Western") to dismiss or transfer this action to the United States District Court for the Eastern District of Missouri. The court heard oral argument on August 17, 1993. For the reasons that follow, the court finds that the defendant's motion must be denied.

Western owns U.S. Patent No. 4,423,955 (the " '955 patent"), which covers improvements on machinery for preparing lithographic plates used in the printing industry. In late 1991, Western learned that plaintiff K & F Manufacturing Company, Inc. ("K & F") had developed a machine, the Plate Express II, that might infringe the '955 patent. The machine was in use at the *Chicago Tribune* newspaper's printing facilities.

On January 9, 1992, Western sent K & F a letter and a copy of the '955 patent, and requested that Western respond concerning the differences between the Plate Express II and the '955 patent. On February 28, K & F informed Western that the machine had been removed from the *Chicago Tribune* facility, and that K & F was redesigning the machine. In June 1992, Western discovered that K & F was going to exhibit a Plate Express II at a trade show later that month. Representatives from Western viewed the machine and remained concerned that the machine continued to infringe the '955 patent. On July 8, the parties discussed the K

& F machine, and K & F sent Western drawings of the Plate Express II.

On November 4, Western apprised K & F of Western's opinion that the Plate Express II continued to infringe the '955 patent, and demanded that K & F "refrain from the manufacture, use or sale of the Plate Express II machine unless it is further modified to avoid infringement." K & F disagreed with Western's opinion regarding the infringement of its patent, and suggested that Western "revisit" the drawings sent on July 8. After restudying the drawings and the prior art reference, Western wrote K & F on January 13, 1993, reiterating its position that K & F's Plate Express II infringed the '955 patent. Western again demanded that K & F "not make, use or sell its Plate Express II machine in the United States."

On April 26, Western wrote K & F and inquired whether K & F recently sold any Plate Express II machines of the same construction as shown in the prior drawings, or whether further modifications had been made to the machines. Western also inquired whether K & F would be displaying a Plate Express II machine at the upcoming trade show in June 1993 and, if so, whether the machine would incorporate changes relevant to the instant dispute. Western asked that K & F respond to the letter by April 30.

On April 28, K & F's counsel indicated that he had sent Western's April 26 letter to his client, but that he had not yet spoken to his client. K & F's counsel also asked Western's counsel whether Western would be willing to grant K & F a license under the '955 patent; counsel for Western indicated that he would refer the question to his client.

On April 30, K & F·filed this suit, seeking a declaration that the manufacture, use, and sale of the Plate Express II does not infringe the '955 patent. K & F filed suit before receiving an answer regarding whether Western would grant K & F a license under the patent, and without responding to Western's April 26 letter. On May 5, Western again asked K & F whether the Plate Express II machines being sold were of the same design as in the prior drawings, or whether they had been modified. K & F's counsel responded that he assumed that the

Plate Express II machines being sold were of the same design. On May 20, Western filed suit against K & F for patent infringement in the Eastern District of Missouri.

Western then moved to dismiss this action or, alternatively, to transfer this action to the Eastern District of Missouri.

Western contends that this case should be dismissed pursuant to *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir.1987), and its progeny, including *Patton Electric Co., Inc. v. Rampart Air, Inc.*, 777 F.Supp. 704 (N.D.Ind.1991), *Natural Gas Pipeline Co. of America v. Union Pacific Resources Co.*, 750 F.Supp. 311 (N.D.Ill.1990), *Associated Mills, Inc. v. Regina Co., Inc.*, 675 F.Supp. 446 (N.D.Ill.1987), and, presumably, *GB Electrical, Inc. v. Erico Products, Inc.*, 777 F.Supp. 737 (E.D.Wis. 1991). The court agrees with Western that those cases, if applicable, would warrant dismissal, but the court also agrees with K & F that those cases are not applicable.

██ This is suit involving a patent; appeal from this court's ruling lies in the United States Court of Appeals for the Federal Circuit. That court recently considered and rejected the *Tempco* rule in *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 936 (Fed. Cir.1993) ("We decline to apply *Tempco Electric* to patent cases."). Western argues that *Genentech* is distinguishable in light of the multiple parties and Multidistrict Litigation Panel presence in that case, and further argues that *Genentech* retained the traditional "forum shopping" exception to the "first to file" rule. The court agrees with Western on these points, but does not believe that these points render *Genentech* inapplicable.

██ *Genentech* was grounded on concerns of national uniformity in patent law. Although *Genentech* conceded that dismissal might be appropriate "when forum shopping was the only motive for the filing" of the declaratory judgment action, 998 F.2d at 937, national uniformity substantially discounts concern about forum shopping. An alleged infringer no longer may file in a regional circuit with more favorable law to avoid another circuit's law; the law of the Federal Circuit follows patent cases to all corners of

the nation. A declaratory judgment plaintiff may achieve a more convenient forum, but cannot achieve a tactical advantage in choice of controlling precedent. Thus, although *Genentech* presented considerations not present here, the advent of the Federal Circuit amply supports the application in this case of its holding: "We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." 998 F.2d at 936.

Nothing in the record suggests that the just and effective disposition of the parties' dispute requires dismissal, or that judicial economy favors dismissal of the Indiana case in favor of the Missouri case. Analysis of Western's alternative prayer for transfer to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) demonstrates that considerations of litigant economy do not require transfer.

■ 28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ A party seeking transfer under this section must establish that (1) venue is proper in both the transferor court and the transferee court, and (2) the transfer is for the convenience of the parties and witnesses and in the interests of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 n. 3 (7th Cir.1986); *Central States, Southeast and Southwest Areas Pension Fund v. Stephens,* 720 F.Supp. 126 (N.D.Ill.1989); *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125 (N.D.Ill.1989). Neither party contests that venue is proper in both the transferor court and the transferee court; thus, the issue is whether the convenience of the parties and witnesses, and the interests of justice, require this case be transferred.

■ The movant bears the burden of showing that the transferee court is clearly more convenient. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286,

1293 (7th Cir.1989); *Coffey v. Van Dorn Iron Works,* 796 F.2d at 219–20. Where transfer merely would shift convenience (and conversely, inconvenience) from one party to another, transfer should not be granted. *Skill–Craft Enterprises, Inc. v. Astro Mfg., Inc.,* 18 U.S.P.Q.2d (BNA) 1555, 1557, 1990 WL 300705 (N.D.Ind.1990); *Cumis Ins. Soc., Inc. v. South–Coast Bank,* 587 F.Supp. 339, 348 (N.D.Ind.1984). Whether to transfer a case pursuant to § 1404(a) ultimately lies within the transferor court's discretion. *Heller Financial v. Midwhey Powder Co., Inc.,* 883 F.2d at 1293; *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986).

Western all but concedes that transfer of this cause to Missouri would merely shift the inconvenience of trying this suit to K & F. Western "recognizes and acknowledges that it would be more convenient for K & F to litigate the dispute in South Bend than in St. Louis." Western's principal place of business is in St. Louis; K & F's principal place of business is South Bend. Both parties have a number of witnesses in their respective areas. Transferring this case would result only in a shift of convenience from K & F to Western, an impermissible basis for transfer.

Accordingly, this case should not be transferred to the Eastern District of Missouri, and considerations of litigant economy do not require dismissal of this declaratory judgment suit. The defendant's motion to dismiss is DENIED, and the defendant's motion to transfer is DENIED.

SO ORDERED.