**NSI CORPORATION, an Oregon corporation, Plaintiff,**

v.

**SHOWCO, INC., a Texas corporation, Defendant.**

Civ. No. 93–1153–FR.

United States District Court, D. Oregon.

Jan. 21, 1994.

Alexander C. Johnson, Jr., Gerald D. Haynes, Marger, Johnson, McCollom & Stolowitz, P.C., Portland, OR, for plaintiff.

Gregory A. Chaimov, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant.

## AMENDED OPINION

FRYE, District Judge:

The matters before the court are 1) the motion of the defendant, Showco, Inc., to dismiss (# 4–1) or alternatively to transfer (# 4–2); and 2) the motion of the plaintiff, NSI Corporation, to enjoin a subsequently filed suit (# 9).

## FACTS

Showco, Inc. (Showco) is engaged in the development, manufacture and leasing of sound systems and speakers that are used at live performances and the provision of related services. NSI Corporation (NSI) designs, manufactures and sells microprocessor based lighting controllers and dimmers for lighting systems that are used at live performances.

In 1986, Showco began using the mark PRISM in connection with a new high quality sound system. In 1987, Showco registered the mark PRISM (Reg. No. 1,457,279) with the United States Patent and Trademark Office for "sound equipment namely speakers." The registration is now incontestible under section 15 of the United States Trademark Act (15 U.S.C. § 1065). Showco's PRISM sound system has been used in live performances throughout the United States and elsewhere by musicians. Showco's PRISM sound system is its most important product.

In early 1993, NSI filed an application with the United States Patent and Trademark Office to register the mark PRISM after having determined that no other companies in the lighting industry were using it as a trademark.

Showco first became aware that NSI was using the mark PRISM as a result of the publication of NSI's application to register the mark PRISM (Serial No. 74/333, 821) in the May 11, 1993 issue of the *Trademark Official Gazette*. In its application to register the mark PRISM, NSI states that it uses the mark in connection with "portable programmable memory lighting controllers and software and user manuals therefor sold as a unit for use in live performances, entertainment tours and events." Exhibit 1 to Supplemental Declaration of Joseph A. Calvaruso.

Showco became concerned that because it was using the mark PRISM for sound systems at the same type of events that NSI proposed to use the mark PRISM for lighting equipment, there was a likelihood of consumer confusion. As a result, on June 9, 1993, Showco filed a request for an extension of time to oppose the application of NSI for the mark PRISM.

On July 30, 1993, Joseph A. Calvaruso, one of Showco's attorneys, wrote a letter to Alexander C. Johnson, Jr., trademark attorney for NSI, informing NSI of Showco's use of the mark PRISM and demanding that NSI "immediately cease and desist from all use of the PRISM mark" and "withdraw its pending application to register said mark." Exhibit 2 to Declaration of Joseph A. Calvaruso, p. 2. In the letter of July 30, 1993, Calvaruso

advised NSI that while Showco was prepared to oppose registration of the mark in the Patent and Trademark Office or to use additional other legal remedies, it would prefer to resolve the conflict amicably.

On August 5, 1993, trademark attorney for NSI contacted Showco's attorney to acknowledge receipt of the letter of July 30, 1993. Showco was informed that NSI was investigating the matter. In early September, counsel for Showco called counsel for NSI to inquire about the status of the matter. At that time, NSI informed Showco that it would be forwarding a settlement proposal.

On September 16, 1993, counsel for NSI sent Showco a settlement proposal pursuant to which NSI's use of the mark PRISM would be limited. In a declaration submitted to this court, the president of NSI, Larry Lynn, stated:

Recognizing that Showco might still demand that NSI stop using PRISM as demanded in their attorney's July 30 letter, however, we decided we would have to fight rather than switch, and needed to be prepared. I was particularly concerned about suit being filed anywhere that might disrupt our marketing or attending an important tradeshow. Therefore, I authorized the preparation and filing of a complaint, but directed that it not be filed unless and until it looked like Showco would not settle short of NSI ceasing to use PRISM.

Declaration of Larry Lynn, p. 6. Despite the declaration of Lynn on behalf of Showco that he had directed that suit not be filed until it looked like a settlement would not be possible, NSI filed this declaratory judgment action on September 17, 1993, one day after it mailed the settlement offer to Showco.

NSI served the complaint on Showco on October 15, 1993. On the same day, counsel for NSI sent Showco's attorney a copy of NSI's complaint and a renewed offer of settlement. In the letter of October 15, 1993, counsel for NSI stated:

Although it has been three weeks since NSI's settlement proposal, Showco has yet to respond to NSI in any fashion. Thus, it is the lack of communication with Showco and the resulting uncertainty that prompted NSI to file suit. NSI sincerely desires to resolve this matter amicably and forego the expense and disruption of litigation.

Exhibit 4 to Declaration of Joseph A. Calvaruso.

NSI acknowledges that the letter of October 15, 1993 contains several misstatements. The most significant misstatement contained in the letter of October 15, 1993 is the representation of Gerald D. Haynes that the delay of Showco had caused NSI to "file suit" when, in fact, the delay of Showco had prompted NSI only to make service of the suit which had been filed on September 17, 1993. See Declaration of Gerald D. Haynes, p. 4.

On October 19, 1993, Showco formally rejected NSI's offer of settlement. On November 2, 1993, Showco sued NSI in the United States District Court for the Northern District of Texas, *Showco, Inc. v. NSI Corp.*, No. CV 2203–R. In that complaint, Showco alleges that the use of the mark PRISM by NSI constitutes trademark infringement, false designation of origin, and unfair competition under federal, state and common law and dilution under the laws of the State of Texas.

## STANDARD OF REVIEW

The Declaratory Judgment Act provides, in relevant part:

In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The Declaratory Judgment Act does not grant litigants an absolute right to a legal determination. The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." *United States v. Washington*, 759 F.2d 1353, 1356 (9th Cir.1985) (citations omitted).

The doctrine of federal comity is a discretionary doctrine which permits one federal district court to decline to exercise jurisdiction over a matter if a complaint has been filed in another federal district court. *Church of Scientology v. United States Dep't of Army,* 611 F.2d 738, 749 (9th Cir.1979). In its classic formulation, the doctrine of comity permits a federal district court to decline to exercise jurisdiction over a matter if a complaint has theretofore been filed in another federal district court. When considering issues raised by the doctrine of comity, courts are not bound by technicalities.

## CONTENTIONS OF THE PARTIES

Showco contends that this declaratory judgment action should be dismissed or transferred to the State of Texas on the ground that NSI misused the Declaratory Judgment Act to engage in forum shopping. In particular, Showco contends that NSI unfairly used the guise of settlement negotiations to induce Showco to refrain from filing a lawsuit in the State of Texas so that NSI could file an action for declaratory judgment in this court. NSI contends that because it waited a month after filing this action to serve the complaint, and did so only after it had received no response from Showco regarding its offer of settlement, it did not engage in inequitable conduct, and therefore the rule of "first-in-time, first-in-right" applies.

## ANALYSIS AND RULING

In *Mentor Graphics Corp. v. Trimeter Technologies Corp.,* 739 F.Supp. 542, 544 (D.Or.1990), this court held:

> Ordinarily, there is a presumption in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, where two parties file actions simultaneously, the party seeking declaratory judgment stands on equal footing with the party seeking the traditional remedy, unless the party seeking declaratory judgment unfairly took advantage of the other in a race to the courthouse. *Ashe v. Pepsico, Inc.,* 443 F.Supp. 84, 85 (S.D.N.Y.1977).

In *Mentor Graphics,* the complaint of each of the parties was filed within half an hour of one another. The day that both of the complaints were filed was the day after settlement negotiations had broken down, and the attorney for Trimeter had telephoned the attorney for Mentor Graphics to inform him that Trimeter intended to file suit. The evidence showed that Mentor Graphics drafted its complaint after it had been informed that Trimeter intended to file suit. This court found that Mentor Graphics did not act "in bad faith or in anticipation of Trimeter's filing" in another state. *Id.* at 544.

Mentor Graphics won a race to the courthouse where the parties were on equal footing. The facts here differ from those in *Mentor Graphics.* In this case, Showco, having been led to believe that settlement negotiations were in progress, did not know that the race to the courthouse had begun. NSI filed this action one day after it mailed its settlement proposal. The fact that NSI did not serve the complaint on Showco until nearly a month after it was filed does not diminish the fact that NSI misled Showco into delaying the filing of the suit in the State of Texas. In addition, in the letter of October 15, 1993 to Showco, NSI suggested that NSI's suit had been filed on October 15, 1993, and that the suit was filed only in response to Showco's delay, when the suit had actually been filed on September 17, 1993.

In *Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.,* 592 F.Supp. 562, 568 (E.D.Pa.1984), a case similar to this one, the United States District Court for the Eastern District of Pennsylvania held:

> Grand Trunk maintains that the only reason Conrail's complaint was first filed was due to its having misled Grand Trunk into believing it was engaging in good faith settlement discussions. In light of Conrail's unseemly conduct in winning the race to the courthouse when Grand Trunk did not even know there was a race, allowing this action to proceed would condone a misuse of the Declaratory Judgment Act. Accordingly, Grand Trunk's motion to dismiss will be granted.

The court in *Associated Mills, Inc. v. Regina Co.*, 675 F.Supp. 446, 448 (N.D.Ill.1987), similarly refused to recognize an attempt by a plaintiff in a declaratory judgment action to engage in forum shopping:

> Finally, in this Court's opinion, AMI's conduct in filing this declaratory judgment action amounted to nothing more that a preemptive strike. AMI should not be rewarded for winning the race to the courthouse. Nor should it be permitted to distort the purpose of a declaratory judgment by using it as a vehicle to secure a forum of its own choosing. Accordingly, this Court denies AMI's emergency motion for a temporary restraining order and, in view of the pending New Jersey action, dismisses this action.

This court concurs with the conclusions of the courts in *Consolidated Rail Corp.* and *Associated Mills, Inc.*, NSI took advantage of the fact that Showco had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way. The settlement offer of NSI, mailed just one day before NSI filed this declaratory judgment action states, in part: "NSI is mindful of the vagaries and expense of litigation and would very much like to resolve this matter amicably." Exhibit C to Declaration of Gerald D. Haynes, p. 2 (letter of September 16, 1993). This statement verifies that Showco's belief that NSI did not intend to file suit, at least until Showco had an opportunity to consider the settlement offer, was a reasonable belief.

NSI argues that Showco delayed in responding to its settlement offer, leaving NSI no option other than to proceed with this declaratory judgment action. However, the facts before the court are that Showco's delay of one month in responding to the settlement proposal is consistent with the usual course of communication between the parties. Further, NSI admits that it was the fear of suit in an inconvenient forum, not Showco's delay in responding to a settlement offer, that prompted NSI to file this declaratory judgment suit.

## CONCLUSION

Accordingly, the motion of Showco to dismiss (# 4–1) is granted; the alternative motion of Showco to transfer (# 4–2) is denied as moot; and the motion of NSI to enjoin a subsequently filed suit (# 9) is denied.

## AMENDED JUDGMENT

Based on the record, IT IS ORDERED AND ADJUDGED that this action is dismissed.