AGRIDYNE TECHNOLOGIES, INC., a
Delaware Corporation, Plaintiff,

v.

W.R. GRACE & CO.–CONN., a
Connecticut Corporation,
Defendant.

Civ. No. 94–C–565W.

United States District Court,
D. Utah,
Central Division.

Sept. 6, 1994.

Gerald P. Dodson, Emily A. Evans, Mar-
guerite F. Ethier, Howard, Rice, Nemerov-
ski, Canady, Robertson, Falk & Rabkin, San
Francisco, CA and Brian T. Hansen, Holland
& Hart, Salt Lake City, UT, for plaintiff.

James S. Jardine, Rick B. Hoggard, Ray, Quinney & Nebeker, Salt Lake City, UT and Richard Racine, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for defendant.

## ORDER DENYING AND GRANTING MOTIONS TO DISMISS

WINDER, Chief Judge.

This matter is before the court on Defendant W.R. Grace & Co.–Conn.'s ("Grace") Motion to Dismiss, under Fed.R.Civ.P. 12(b)(1), Plaintiff AgriDyne Technologies' ("AgriDyne") Complaint for Declaratory Judgment. Grace argues that this court lacks subject matter jurisdiction to hear AgriDyne's complaint; or in the alternative, that this court should exercise the discretion granted it by the Declaratory Judgment Act to dismiss the action.

A hearing on Grace's motion to dismiss was held on August 8, 1994. At this hearing Grace was represented by James S. Jardine, Rick B. Hoggard, and Richard Racine; and AgriDyne was represented by Gerald P. Dodson, Emily A. Evans, and Brian T. Hansen. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties relating to the motion. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking the motion under advisement, the court has further considered the law and facts related thereto. Being now fully advised, the court enters the following memorandum decision and order.

## I. BACKGROUND

Grace is a specialty chemical company which holds patents covering aspects of certain azadirachtin-based pesticides produced by Grace and marketed by Grace and its licensees. Grace's operations are primarily located in various Eastern States. AgriDyne, a Utah-based company incorporated in Delaware, likewise has developed and marketed azadirachtin-based pesticide formulations. Azadirachtin is a chemical compound found in neem seeds, which are harvested from trees in remote areas including India, Indonesia, and several African nations.

Grace holds U.S. Patent Nos. 5,001,146 ("the '146 patent") and 5,124,349 ("the '349 patent"). These patents relate to the storage stability of azadirachtin in solution.

The essential facts pertinent to Grace's motion to dismiss are undisputed. Grace's '146 and '349 patents issued on March 19, 1991 and June 23, 1992, respectively. Grace markets its azadirachtin-based pesticides directly under the trademark "NEEMIX" and, through license agreements, under the trademarks "MARGOSAN–O" and "BIONEEM." AgriDyne began product development and test marketing of its azadirachtin-based product in 1991. AgriDyne markets its pesticides under the trademarks "AZATIN," "TURPLEX," and "ALIGN." On February 13, 1992, Dr. Martin B. Sherwin, President of Grace's Commercial Development Division, sent a letter and a copy of Grace's '146 patent to Eric B. Hale, then President and CEO of AgriDyne, stating a belief that AgriDyne's product was "within the scope of at least one Grace patent." (Grace Mem.Support Dismiss ex. A) [hereinafter "Grace Support"]. Hale responded, asserting that AgriDyne's products did not infringe Grace's '146 patent. (Grace Support ex. B). Sherwin then sent to Hale another letter in which he stated that "[y]our position is somewhat puzzling, since our attorneys have advised me an analysis indicates that the liquid Azatin formulation is within our patent claims." (Grace Support ex. C). Hale again denied that AgriDyne's formulations violated the '146 patent. (Grace Support ex. D). The two companies then commenced negotiations directed toward the possibility of a merger of AgriDyne's business with Grace's "BioRational" business (the division of Grace responsible for development of its azadirachtin products).

Not surprisingly, the parties' characterizations of the negotiations are now quite different. Grace claims that the parties "were amicably discussing a possible merger between certain parts of their businesses [when] AgriDyne ran to this court and filed its complaint." (Grace Support at 1). AgriDyne, on the other hand, asserts that it was negotiating while "the threat of patent litigation [hung] over its head for more than two

years." (AgriDyne Mem.Oppos. Dismiss at 1) [hereinafter "AgriDyne Oppos."]. Regardless of the true nature of the negotiations, it is undisputed that Grace has consistently asserted that AgriDyne's azadirachtin products violated its '146 patent.

On June 29, 1993, Sherwin again wrote to Hale stating that Grace, after consulting its own attorneys and outside patent counsel, had "concluded that the new AgriDyne formulation is covered by the claims of Grace's U.S. patent 5,001,146.... Grace intends to continue to protect and enforce this patent as appropriate." (Grace Support ex. F) As discussions concerning a possible business resolution continued, the main focus of dispute revolved around differing valuations of Grace's BioRational assets. On February 24, 1994, Alex Markin, Grace Vice–President in charge of Mergers and Acquisitions, wrote to Peter Stalker III, a member of AgriDyne's board of directors, detailing Grace's valuation of BioRational. (Grace Support ex. G). This valuation apparently exceeded AgriDyne's assessment by several million dollars. In this letter Markin commented that "[s]hould we start soon with detailed merger discussions, we are prepared to delay the infringement actions we'll otherwise have to institute in order to preserve the value of our proprietary technology." (Id. at 3).

Various meetings continued through the spring of 1994; and in late May and early June of 1994 Markin and Stalker again discussed the status of the negotiations, this time by phone. In a June 3 conversation, Markin told Stalker that AgriDyne's offer to purchase Grace's BioRational business was still too low. (Markin Aff. at 4 ¶ 9). Stalker replied that AgriDyne was in the process of acquiring another business which would allow an enhanced offer and that he would know more about that possibility at the end of June. Id. In his affidavit Markin admits that he then "indicated that Grace's legal people were advising us that we must file a lawsuit against AgriDyne next week in order to preserve our rights." Id. AgriDyne filed a complaint dated June 3, 1994, in this Court

asking for a declaratory judgment that Grace's '146 and '349 patents are invalid, unenforceable, and not infringed by Agri-Dyne's products or processes.[1] Subsequently, on June 7, 1994, Grace filed a patent infringement action in the United States Court for the District of Delaware, asserting that AgriDyne violated its '146 patent.

## II. STANDARD OF REVIEW

Where a motion to dismiss for lack of subject matter jurisdiction "denies or controverts the pleader's allegations of jurisdiction.... only uncontroverted factual allegations are accepted as true for purposes of the motion." *Cedars–Sinai Medical Center v. Watkins,* 11 F.3d 1573, 1583, 29 U.S.P.Q.2d 1188, 1196–97 (Fed.Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994). "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." 11 F.3d at 1584, 29 U.S.P.Q.2d at 1197.

## III. ANALYSIS:

### A. The '146 Patent

1. Existence of Jurisdiction

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking declaration." 28 U.S.C. § 2201(a). Hence, the essential issue under the Declaratory Judgment Act is the existence of an "actual controversy."

Determination of whether there is an actual controversy in patent actions generally entails the two part inquiry of (1) whether the declaratory plaintiff has acted in a way that the patentee asserts infringes the patent, or is preparing to act in such a way; and (2) whether the patentee has created,

---

1. There is some dispute amongst the parties as to when AgriDyne's complaint was filed (Grace asserts that the complaint was actually filed on June 6th). Nevertheless, it is undisputed that

AgriDyne's complaint for Declaratory Judgment preceded Grace's patent infringement action. (Grace Support at 11; Agridyne Oppos. at 7 n. 1).

in the declaratory plaintiff, a reasonable apprehension of suit for infringement. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936, 27 U.S.P.Q.2d 1241, 1243–44 (Fed. Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994), (citing *Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735–36, 6 U.S.P.Q.2d 1685, 1689 (Fed.Cir.1988)); *see also BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 U.S.P.Q.2d 1124, 1126 (Fed.Cir.1993). In this case both parties agree that AgriDyne has "acted in a way that [Grace] asserts infringes [its '146] patent." (Grace Support at 15; AgriDyne Oppos. at 10–11). The existence of jurisdiction thus turns on whether actions by Grace created in AgriDyne a reasonable apprehension of suit. Reasonable apprehension may be induced by "an explicit threat or other action by the patentee." *BP Chemicals*, 4 F.3d at 978, 28 U.S.P.Q.2d at 1126. Moreover, "[w]hen the patentee has explicitly charged that a current activity of the declaratory plaintiff is an infringement, 'certainty has rendered apprehension irrelevant, and one need say no more.'" *Genentech*, 998 F.2d at 936–37, 27 U.S.P.Q.2d at 1244 (quoting *Arrowhead*, 846 F.2d at 736, 6 U.S.P.Q.2d at 1689).

In this case it is unnecessary to resolve factual disputes for a determination of jurisdiction. Based on the undisputed evidence relating to the course of dealings between AgriDyne and Grace, this court finds that Grace's actions created a reasonable apprehension of suit for infringement. On several occasions Grace asserted that AgriDyne's azadirachtin-based pesticides infringed Grace's '146 patent. On many of these occasions Grace executives explicitly notified AgriDyne that Grace was prepared to aggressively defend its patent, specifically referring to possible legal action. Finally, Grace Vice–President, Alex Markin informed AgriDyne that Grace's lawyers had advised

filing a lawsuit within a week's time. Hence, not only did Grace on multiple occasions assert infringement, it also made an explicit threat of imminent litigation. These actions easily fulfill the criteria for reasonable apprehension as stated by either *BP Chemicals* or *Genentech.* Therefore, jurisdiction over AgriDyne's declaratory judgment action exists with respect to Grace's '146 patent.

### 2. Exercise of Discretion

 As Grace correctly observes, a finding that jurisdiction exists does not end the inquiry. Jurisdiction is permissive. A federal district court has discretion to dismiss a declaratory suit where there is "sound reason that would make it unjust or inefficient" to proceed with a declaratory action. *Genentech.* 998 F.2d at 938, 27 U.S.P.Q.2d at 1244. The various federal circuit courts of appeal have applied a number of differing rules and approaches in evaluating discretionary refusals to exercise jurisdiction under the Declaratory Judgment Act. In *Genentech,* the Federal Circuit, exercising its plenary power over patent appeals, attempted to resolve some of these conflicts in the patent context. *Genentech* reaffirmed the general rule that, in cases where two separate actions concerning the same dispute have been filed in different venues, the first-filed action takes precedence. 998 F.2d at 937, 27 U.S.P.Q.2d at 1244.

Nevertheless, *Genentech* also acknowledged that there may be circumstances in which it would be appropriate to dismiss a declaratory action. In addition to the "sound reason" exception to the first filed rule,[2] *Genentech* mentioned the frequently cited "forum shopping" exception. 998 F.2d at 938, 27 U.S.P.Q.2d at 1245. "Forum shopping," however, has been subject to varying definitions and *Genentech* did not elaborate upon that subject. Examination of other cases

---

**2.** As examples of sound reason *Genentech* observed that "[s]uch reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." 998 F.2d at 938, 27 U.S.P.Q.2d at 1244. This list apparently was not intended to be exhaustive but it is pertinent to

note that none of these considerations exist in this case. With respect to questions of convenience, the parties' interests are essentially at equipoise. Both parties assert that their witnesses and resources are in close geographical proximity to their chosen forum. In so far as "sound reason" raises questions of fairness and public policy, those issues will be addressed in the context of the discussion on forum shopping.

addressing this question reveals that forum shopping analysis has been employed in two distinct contexts: shopping for a better outcome, and shopping for a more convenient location.

Recently, the United States District Court for the Northern District of Illinois limited *Genentech*'s holding to outcome forum shopping. In *Roadmaster Corp. v. NordicTrack Inc.*, the court stated:

> Forum shopping, as condemned in *Genentech*, is seeking out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another. On the other hand, filing suit in a forum that is convenient to the party filing is not the type of forum shopping denounced in *Genentech*.

29 U.S.P.Q.2d 1699, 1701, 1993 WL 625537, at *3 (N.D.Ill.1993) (citation omitted); *see also K & F Mfg. Co. v. Western Litho Plate & Supply Co.*, 831 F.Supp. 661, 663, 29 U.S.P.Q.2d 1155, 1156 (N.D.Ind.1993) (observing advent of uniform appellate jurisdiction over patent cases "substantially discounts concern about forum shopping" [3]); *cf. Genentech*, 998 F.2d at 937, 27 U.S.P.Q.2d at 1244 (discussing "special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits"); *Aerojet–General Corp. v. Machine Tool Works*, 895 F.2d 736, 744 & n. 7, 13 U.S.P.Q.2d 1670, 1677 & n. 7 (Fed.Cir. 1990) (reciting legislative desire to avoid forum shopping amongst various regional circuits by directing all patent appeals to Federal Circuit); *Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F.Supp. 588, 592 n. 8, 112 U.S.P.Q. 230, 232 n. 8 (S.D.N.Y.1957) (reciting statistics demonstrating variances amongst circuits prior to Federal Circuit's patent monopoly).

AgriDyne urges this court to take a similarly narrow view of forum shopping, asserting that selection of a forum based merely on geographical convenience does not provide a basis for declining jurisdiction.[4] (AgriDyne Oppos. at 17). Supporting this argument, AgriDyne correctly observes that "Grace has not alleged ... that AgriDyne filed its action in Utah to avoid unfavorable legal precedent in Delaware or any other forum." (*Id.* at 16). Thus, AgriDyne did not engage in outcome forum shopping and, if *Roadmaster*'s assessment of *Genentech* is correct, AgriDyne's first filed action should prevail over Grace's later filed patent infringement suit.

Grace, however, takes issue with AgriDyne's characterization of *Genentech* and argues that "preemptive" or "anticipatory" filings of declaratory judgment actions likewise constitute forum shopping sufficient to justify refusing jurisdiction over those actions. (Grace Reply Mem. at 7) [hereinafter "Grace Reply"]. In essence then, Grace argues that *Genentech*'s holding should not be limited to outcome forum shopping, but in certain circumstances should be applied to forum shopping for convenience. Grace thus argues that equitable and public policy considerations ought . to play a part in determining which party receives the most convenient forum.

Consonant with Grace's position on the forum shopping issue, courts have commonly

---

**3.** Indeed, *K & F Mfg.* questioned whether outcome forum shopping in patent cases is even possible. That case went on to state that, because the Federal Circuit now takes all patent appeals, "[a] declaratory judgment plaintiff may achieve a more convenient forum, but cannot achieve a tactical advantage in choice of controlling precedent." 831 F.Supp. at 664, 29 U.S.P.Q.2d at 1156.

**4.** Of course the privilege of choosing one's forum based on convenience should not be underestimated. Travelling (with witnesses and evidence in tow) to a distant venue is expensive and burdensome even for the most solvent of organizations. The choice of forum can thus dramatical-

ly affect litigation decisions even where there is no opportunity for outcome forum shopping. Nevertheless, absent a sound reason for penalizing one of the parties, it makes even less sense to arbitrarily inflict this burden on the first filing party than it does to impose it on the second. In fact, the purpose of the Declaratory Judgment Act was to level the playing field when it comes to convenience of forum. As the Supreme Court stated, the Declaratory Judgment plaintiff, though not granted a headstart, is "given an equal start in the race to the courthouse." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952).

relied on two rationales [5] when exercising discretion to dismiss a declaratory judgment action: (1) the public policy of promoting negotiation and settlement to avoid litigation, and (2) the notion that declaratory judgment actions are inappropriate when suit by the patentee is imminent. These rationales provide a basis for granting precedence to a later filed action even in the absence of outcome forum shopping.

Grace alludes to the first rationale (promoting settlement and discouraging litigation) by asserting that "[a]lthough Grace was prepared in May, 1994 to bring a patent infringement suit against AgriDyne in Delaware ... all activity toward that end had been placed on hold because of the ongoing merger discussions." (Grace Support at 11). As a result, claims Grace, "at a time when AgriDyne led Grace to believe that the two companies were working together on a merger deal which would avoid a legal dispute, AgriDyne rushed to this court and filed the present action for declaratory relief." (*Id.* at 23). In other words, goes the argument, granting jurisdiction under the Declaratory Judgment Act, when patentees have relied to their detriment on the potential of out-of-court settlement, wrongly rewards accused infringers for filing unforeseen declaratory judgment actions, and encourages unnecessary litigation. *See NSI Corp. v. Showco, Inc.*, 843 F.Supp. 642, 645–46, 30 U.S.P.Q.2d 1546, 1548–49 (D.Or.1994); *Davox Corp. v. Digital Systems Int'l, Inc.*, 846 F.Supp. 144, 148, 26 U.S.P.Q.2d 1231, 1160 (D.Mass.1993); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp 1350, 1354, 26 U.S.P.Q.2d 1622, 1625 (S.D.N.Y.1992); *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F.Supp. 1155, 1160, 5 U.S.P.Q.2d 1612, 1616 (W.D.N.Y.1987).

Nevertheless, even if this argument is consistent with *Genentech*, it does little to assist Grace's position. Grace and AgriDyne's negotiations had arrived at a point where their respective postures on a merger were still several million dollars apart. AgriDyne represented that it was working on an enhanced offer for Grace's BioRational business, but would require another month for confirmation. Grace responded by stating that its attorneys were recommending a lawsuit within a week. At this point AgriDyne was justified in believing that further negotiations were pointless. Thus, granting precedence to Grace's choice of forum (as opposed to AgriDyne's first filed preference) would not promote the policy of encouraging negotiation and settlement, and there is no reason for this court to exercise its discretion to dismiss on that basis.[6]

5. Neither Grace nor many of the relevant cases draw a distinction between these two rationales. Examination of the case law, however, reveals that the so-called "preemptive" or "anticipatory" basis for declining discretion is used in both contexts, often with little or no explanation as to which rationale is being employed. The two rationales are here discussed separately because they *are* distinct, perhaps even contradictory, in nature. Also, the cases do not necessarily treat the two rationales as aspects of "forum shopping." Nevertheless, since the forum of convenience is the inevitable prize being sought in these cases, the issue of forum shopping (either for convenience or for outcome) permeates all the rationales for discretionary dismissal of a declaratory judgment action.

6. The policy of promoting negotiation amongst potential litigants may also figure in calculating the reasonable apprehension required for jurisdiction under the Declaratory Judgment Act. *See e.g., BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979–80, 28 U.S.P.Q.2d 1124, 1128–29 (Fed.Cir.1993) (finding no threat of suit in licensing negotiations); *Century Industries, Inc. v. Wenger Corp.*, 851 F.Supp. 1260, 1264, 31 U.S.P.Q.2d 1206, 1210 (S.D.Ind.1994) (holding parties merely engaged in posturing not rising to level of reasonable apprehension). In many cases (including Grace's merger discussions with AgriDyne), however, it is the threat of litigation which serves as the motivating factor for negotiation. This being the situation, it is more analytically sound to treat the questions of settlement and negotiation as part of the discretion issue. In other words, an explicit threat of patent litigation gives rise to a reasonable apprehension of suit and simultaneously provides the initiative to enter negotiations designed to avoid that litigation. The controversy thus becomes ripe for adjudication as soon as the initial threat of patent litigation is made; but so long as one party reasonably relies on the forbearance of the other during subsequent negotiations, there may be equitable and public policy reasons for discretionary dismissal of a declaratory action when one party unfairly takes advantage of that forbearance to secure a more convenient forum. Here it is pertinent to note that even if this court treated the question of settlement as an issue determining reasonable apprehension, the outcome in the instant case would remain unaffected. Grace's threats, culminating in a notice of

This brings us to the second rationale for a discretionary refusal to take jurisdiction: the inappropriateness of allowing a declaratory judgment action to proceed in the face of an imminent patent suit. With respect to this issue Grace relies heavily on *KPR Inc. v. C & F Packing Co.,* 30 U.S.P.Q.2d 1320, 1993 WL 726236 (N.D.Tex.1993). The purpose of the Declaratory Judgment Act, according to *KPR* and numerous other cases, is to "provide persons threatened with litigation the means for forcing those making threats to take action." *Id.* at 1323, 1993 WL 726236, at *4; *see also Arrowhead,* 846 F.2d at 735, 6 U.S.P.Q.2d at 1688; *Dewey & Almy Chemical Co. v. American Anode, Inc.,* 137 F.2d 68, 69 (3d Cir.1943), *cert. denied,* 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). Prior to the Declaratory Judgment Act, competitors of patentees "were rendered helpless and immobile so long as the patent owner refused to grab the nettle and sue." *Arrowhead,* 846 F.2d at 735, 6 U.S.P.Q.2d at 1688. However, because an imminent (as opposed to a merely potential) patent suit assures prompt adjudication, the imminent suit does not present accused infringers with a choice "between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises." *Id.* By inference, then, the assumption is that when a patentee expresses the intention to file suit without delay, there is no reason to invoke the Declaratory Judgment Act. As *KPR* aptly stated the proposition,

> [since the patentee] followed through on its threats in a timely fashion by filing suit in [another district].... the possibility of [the accused infringer] incurring "a growing potential liability" was alleviated by [the pat-

entee's] actions, and the need for declaratory relief to protect [the accused infringer's] interest dissipated with the filing of the [patent suit].

30 U.S.P.Q.2d at 1323, 1993 WL 726236, at *4.

In this case such a rationale would virtually mandate dismissal of AgriDyne's declaratory judgment action. Not only did Grace threaten to file suit, but the filing of it was expressly scheduled for the following week, and was in fact filed within four days.[7] However, this second basis for discretionary dismissal of declaratory judgment actions cannot be reconciled with *Genentech.* *Genentech* involved a case where the patentee filed suit on the patent only one day after the accused infringer filed an action for declaratory relief. 998 F.2d at 935, 27 U.S.P.Q.2d at 1243. In treating the district court's dismissal of that declaratory action, *Genentech* explicitly rejected the analysis offered in *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 749, 2 U.S.P.Q.2d 1930, 1934 (7th Cir.1987), a case involving a trademark dispute wherein the relevant suits were filed four days apart. *Tempco* embraced the imminent suit rationale by observing that "a federal court may grant a declaratory judgment to prevent one party from continually accusing the other ... without allowing the other to secure an adjudication of his rights by bringing suit.... [However, the patentee] has not engaged in such conduct. It promptly filed suit to enforce its claim...." *Id.* It was precisely this rationale that *Genentech* rejected in "declin[ing] to apply *Tempco Electric* to patent cases."[8] *Genentech,* 998 F.2d at 937, 27 U.S.P.Q.2d at 1244. Grace cannot rely on *KPR* or any other

---

imminent suit, terminated the negotiations and induced a reasonable apprehension of litigation.

7. The irony here is that Grace, in support of its argument that AgriDyne had no reasonable apprehension of suit, asserts that the threat was merely posturing and that Grace only filed suit as a response to AgriDyne's action. (Grace Support at 19). Hence, on the one hand, Grace cites to *KPR*'s arguments containing this rationale, (*Id.* at 22–23), but on the other hand, explicitly disclaims the underlying facts required to make the argument. Thus, even if the imminent suit rationale proves viable, it is questionable whether Grace could claim its benefits.

8. *Genentech* did reiterate that the underlying rationale for the Declaratory Judgment Act was "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech,* 998 F.2d at 937, 27 U.S.P.Q.2d at 1244. Nevertheless, the explicit rejection of *Tempco* and the underlying fact situations in both *Tempco* and *Genentech* indicate that *Genentech* did not thereby intend to narrow the scope of the Declaratory Judgment Act so as to exclude cases involving an imminent threat of litigation.

cases in so far as they purport to preserve an exception to the first filed rule based on an imminent patent suit rationale. As a result, this court finds that jurisdiction exists and sees no reason to dismiss AgriDyne's declaratory action with respect to the '146 patent.

### B. The '349 Patent

 AgriDyne also seeks a declaratory judgment with respect to Grace's U.S. Patent No. 5,124,349, which AgriDyne asserts is "a continuation-in-part of the '146 patent."[9] (AgriDyne Oppos. at 18). However, AgriDyne cannot point to any mention of the '349 patent in any of the extensive correspondence between Grace and AgriDyne; nor does AgriDyne assert that the '349 patent was discussed during any of the negotiations. Grace and AgriDyne have had numerous contacts regarding their dispute subsequent to the June 23, 1992, issue of that patent, nearly two years prior to the initiation of this litigation. Yet, AgriDyne does not even allege that Grace mentioned or discussed that patent during that period. Notably, the '349 patent was conspicuously absent from Dr. Sherwin's June 29, 1993, letter "concluding" that Agridyne was violating the '146 patent. (Grace ex. F). Moreover, Grace did not include the '349 patent in its Delaware lawsuit. (Ethier Decl.Ex. A). Although AgriDyne claims that Grace mentioned its portfolio of patents and discussed multiple patents in a general sense, those instances included only vague references to other patents and, at one point, referred only to Grace's valuation of its BioRational assets. (Grace Support ex. G). Limited to these slim references, AgriDyne cannot claim that any act by Grace instilled a reasonable apprehension of a patent infringement suit with respect to the '349 patent. Therefore, jurisdiction does not exist with respect to that patent, because the dispute involving that patent is not ripe for adjudication. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977, 28 U.S.P.Q.2d 1124, 1126 (Fed.Cir.1993).

9. AgriDyne does not cite any authority for the proposition that similarity between two patents by itself raises a reasonable apprehension of suit

### IV. ORDER

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Grace's Motion to Dismiss AgriDyne's Declaratory Judgment action, as to Grace's U.S. Patent No. 5,001,146, is hereby denied.

2. Grace's Motion to Dismiss AgriDyne's Declaratory Judgment action, as to Grace's U.S. Patent No. 5,124,349, is hereby granted, without prejudice.

3. This order shall serve as the order of the court and no further order need be prepared by counsel.

when litigation is threatened under only one of those patents.