# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 9, 2014          Decided March 10, 2015

No. 13-7151

STONE & WEBSTER, INC. AND WESTINGHOUSE ELECTRIC
COMPANY, LLC,
APPELLANTS

v.

GEORGIA POWER COMPANY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01783)

———

*Brian G. Corgan* argued the cause for appellants. With him on the briefs were *David C. Smith* and *Shelly L. Ewald*. *Michael A. Branca* and *Timothy E. Heffernan* entered appearances.

*Gordon L. Garrett Jr.* argued the cause for appellees. With him on the brief were *Joseph E. Finley*, *Melvin S. Blanton*, *Andrew D. Ness*, and *Charles W. Whitney*.

Before: WILKINS, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from the judgment of the district court, Judge Kollar-Kotelly, dismissing a complaint filed in the United States District Court for the District of Columbia in favor of a complaint filed in the federal district court for the Southern District of Georgia. The plaintiff in the D.C. action is the defendant in the Georgia action, and *vice versa*. Each suit is, to a large extent, the mirror image of the other. Jurisdiction rests on diversity of citizenship, 28 U.S.C. § 1332. There is no contention that both suits should proceed. The question is which complaint—the one filed in D.C. or the one filed in Georgia—should go forward. The district judge, in a thorough and closely reasoned opinion, determined that the D.C. action should be dismissed and that the Georgia action should proceed.

The dispute arises under a contract, signed in 2008, for the design and construction of two nuclear electrical generating units at a power plant in Georgia. Stone & Webster, Inc., and another company agreed to build the units for Georgia Power Company and others. The contract, which specifies that it is to be governed by Georgia law, sets a fixed price for the work but includes reimbursement for some additional costs.

Regulatory requirements of the United States Nuclear Regulatory Commission delayed the project and imposed additional costs. Stone & Webster sought payment for the added expenses. Georgia Power denied that the contract made it responsible for the extra charges.

The contract includes dispute resolution procedures. The parties must first meet to seek a resolution. If this does not end the dispute within thirty days, the parties are to engage in mediation. For claims of more than $25 million (the claims here are considerably larger), if the mediation does not conclude

within sixty days, "either Party shall have the right to proceed to litigation . . . in a court of competent jurisdiction."

Under the heading "Venue," the contract states that the parties "agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia for any legal proceedings" arising out of the contract and "accept[], generally and unconditionally, the jurisdiction" of that court. Each party "waives" the right to challenge cases brought in the D.C. District Court "on the basis of forum non-conveniens or improper venue." The contract adds, in the same "Venue" provision, that the parties do not "waive any first-to-file challenges to venue."

Stone & Webster and Georgia Power attempted to negotiate a resolution of their dispute and, when that failed, entered into mediation. They agreed that mediation, if unsuccessful, would conclude on November 1, 2012, at 8:00 p.m., and that no lawsuit could be filed before then.

When the designated hour arrived on November 1, Stone & Webster filed its District of Columbia complaint against the Georgia Power group. The complaint sought more than $900 million resulting from regulatory changes that had occurred and would occur in the future. The law firm representing Stone & Webster used the district court's electronic filing system. Affidavits from the firm stated that one of its computers was connected to the United States Naval Observatory Master Clock.[1] When the Navy's clock registered 8:00:00 p.m., a paralegal pressed the "submit" button on an adjacent computer, thereby "filing" the complaint according to local rules. *See* Rule 5.4(c)(3), Rules of the U.S. District Court for the District of Columbia; U.S. DISTRICT COURT FOR THE DISTRICT OF

---

[1] This is a network of atomic clocks guaranteed not to gain or lose even one second in more than a million years—or your money back.

COLUMBIA, ELECTRONIC CASE FILING SYSTEM USER'S MANUEL 20 (Jan. 2010). The district court's electronic filing log reported "11/01/2012 20:00:01" as the filing date and time of Stone & Webster's complaint.

In the meantime, or at the same time, Georgia Power brought an action in the United States District Court for the Southern District of Georgia. Georgia Power's complaint sought to recover more than $100 million paid under protest to Stone & Webster pursuant to a contract provision requiring the payment of 50 percent of disputed invoices until the dispute is resolved. The complaint also sought a declaratory judgment that the Georgia Power group was not contractually obligated to pay for costs caused by regulatory changes. According to the affidavit of a Georgia Power attorney, he handed the complaint to the court's deputy clerk exactly when the clock on the attorney's cell phone registered 8:00:00 p.m. The deputy clerk noted, on the hard copy of the complaint, "November 1, 2012" and "8:00 p.m." as the date and time of the filing.

A few days later, Stone & Webster filed a motion in the District of Columbia action to enjoin Georgia Power from prosecuting the Georgia suit. Georgia Power responded with a motion to dismiss or stay the District of Columbia action. Each party claimed that it had filed first and that its complaint should therefore be given priority over the other. The district court did not decide who filed first. After reviewing the law and the equities, the court determined that the controversy should be adjudicated in the Southern District of Georgia, regardless of which party filed first. The court therefore dismissed Stone & Webster's complaint, but without prejudice. *Stone & Webster, Inc. v. Georgia Power Co.*, 965 F. Supp. 2d 56, 61-64, 66-67 (D.D.C. 2013).

5

Stone & Webster claims the district court erred for two reasons: the court "applied an improper legal standard in a first to file analysis and incorrectly interpreted" the contract. Appellants' Brief at 15. Stone & Webster does not take issue with the district court's findings regarding the comparative advantage of trying the case in Georgia rather than D.C.

As to the legal standard, the general rule was set in *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952), a decision the parties here neglected to mention. The *Kerotest* Court noticed that the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, had given rise to "the initiation of litigation by different parties to many-sided transactions . . .." *Kerotest*, 342 U.S. at 183. To determine which of two pending suits should proceed, the Supreme Court decided that the lower courts must be given "an ample degree of discretion," *id.* at 183-84; *see UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1123 (D.C. Cir. 2012). "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Kerotest*, 342 U.S. at 183.

In *Kerotest* there were two lawsuits, one begun by the patent holder in Illinois against an alleged infringer. The patent holder later amended its complaint to add Kerotest as a defendant. The amendment in the Illinois case came about two weeks after Kerotest sued the patent holder in Delaware seeking a declaration that its products did not infringe the patents. *Id.* at 181-83. The Supreme Court did not decide the case on the basis of which suit was filed first, a basis the Court deemed a "rigid mechanical solution."[2] *Id.* at 183. Instead the Court held that

[2] More than a century earlier the Court had stated flatly that "In all cases of concurrent jurisdiction, the Court which first has

the "factors relevant to wise administration here are equitable in nature" and that the lower court had properly weighed those factors in holding that the Delaware action should be stayed. *Id.*; *see Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003); *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627-28 (D.C. Cir. 1975); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202-04 (2d Cir. 1970) (Friendly, J.).

*Kerotest* thus held that which of two actions came first was not determinative although it could be relevant, particularly if the earlier action had already progressed beyond the complaint stage. In *Kerotest* itself, the patent holder did not bring Kerotest into its Illinois case until two weeks after Kerotest sued in Delaware. Nonetheless the Supreme Court agreed that the Delaware action should be stayed in favor of the Illinois suit.

From *Kerotest* our court has concluded that "an injunction favoring" the action filed first is not "a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored." *Columbia Plaza Corp.*, 525 F.2d at 627. The district court in the case before us followed these principles and added that "equitable considerations" are particularly important if the competing complaints are filed closely in time, as they were here. *Stone & Webster*, 965 F. Supp. 2d at 61; *see* James P. George, *Parallel Litigation*, 51 BAYLOR L. REV. 769, 788 (1999).

Citing *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987), Stone & Webster argues that Georgia Power's action should be disfavored because it was an "anticipatory declaratory judgment

possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824).

action." Appellants' Brief at 28, 30. Whatever the validity of the rule in *Tempco*,[3] the decision has no application here. Both lawsuits, the one in D.C. and the one in Georgia, were filed in anticipation of each other. And as the district court determined, both lawsuits sought not only coercive relief but also declaratory relief. *See Stone & Webster*, 965 F. Supp. 2d at 64-65.

In all of this, the district court applied the correct legal principles in making a comparative judgment between venue in the District of Columbia and venue in the Southern District of Georgia. For all practical purposes, the filings here were simultaneous and the district court properly treated them as such. As to what *Kerotest* called "equitable" factors, the court's evaluation pointed strongly in favor of allowing the Georgia action to go forward. The Georgia district court is presumably more familiar with the law governing the contract—that is, Georgia state law. *Id.* at 62. Trying the case in the Southern District of Georgia "would permit easier access to relevant evidence"—the construction site is located there and "several potential witnesses with knowledge of the claims" are located in Georgia. *Id.* at 62-63. Other "ties between the parties' dispute

---

[3] *Tempco* was a trademark case in which the alleged infringer brought a declaratory judgment action after the holder of a trademark threatened to sue in another venue and later did so. *Tempco* held that the first-filed declaratory judgment action should be dismissed because it was "in anticipation of an infringement action," 819 F.2d at 749. The Federal Circuit has refused to follow *Tempco*. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Two district courts in the Seventh Circuit have since refused to follow *Tempco* in patent suits, which are appealable only to the Federal Circuit under 28 U.S.C. § 1295(a)(1). *See K & F Mfg. Co. v. Western Litho Plate & Supply Co.*, 831 F. Supp. 661, 663-64 (N.D. Ind. 1993); *Technical Concepts, L.P. v. Zurn Indus., Inc.*, No. 02-C-2827, 2002 WL 31027962, at *6 (N.D. Ill. Sept. 10, 2002).

and the Southern District of Georgia are numerous and undeniable." *Id.* at 63.

There is no reason to say anything more on this subject. As we have mentioned, Stone & Webster does not argue that the court committed any error in evaluating these factors. It claims instead that the court should not have done the evaluation. We have rejected Stone & Webster's first argument that the district court's analysis of the governing law was in error. Stone & Webster's second argument is that the "Venue" provision of the contract, which is set forth in the margin,[4] barred the court from considering equitable factors.

The "Venue" provision states that the parties consent to venue in the District of Columbia and—to quote the contractual language—"waive[] any right to stay or dismiss any action or proceeding . . . [in that court] on the basis of forum non-conveniens or improper venue." The provision also states: "For the avoidance of doubt, the Parties do not by this Section . . . waive any first-to-file challenges to venue." It follows, Stone & Webster contends, that the parties barred the district court from deciding a first-to-file claim on the basis of any factors that

_____

[4] Article "34.3 <u>Venue</u>. The Parties agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia for any legal proceedings that may be brought by a Party arising out of or in connection with this Agreement or for recognition or enforcement of any judgment. Each Party accepts, generally and unconditionally, the jurisdiction of the aforesaid court for legal proceedings arising out of or in connection with this Agreement. Each Party hereby waives any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court on the basis of forum non-conveniens or improper venue. For the avoidance of doubt, the Parties do not, by this Section 34.3, waive any first-to-file challenges to venue."

would also be relevant to *forum non conveniens*. The district court rejected this interpretation and so do we.

The contractual language just quoted is a permissive forum selection clause. The District of Columbia is deemed a proper venue but it is not the only possible venue or even the preferred one. The clause permitting first-to-file challenges to venue contemplates what an adjacent clause makes explicit: "The Parties agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia . . .." A first-to-file challenge compares one lawsuit with another. Under the law of the Supreme Court, and of this and other federal courts, some of the factors to be considered in making this comparison overlap with those considered in *forum non conveniens* cases. But other factors are generally considered only in first-to-file cases. Examples are the relative progress of the two cases and the similarity of the cases. *See, e.g.*, George, *Parallel Litigation*, *supra*, 51 BAYLOR L. REV. at 787-88 (listing eleven factors in addition to the convenience of the parties). To credit Stone & Webster's argument would be to treat the contractual "Venue" provision as if it waived any first-to-file challenge resting on considerations of equity. That would be to contradict the contract, which states in the clearest possible terms that first-to-file challenges were permitted and that the "Venue" provision did not waive "any" such challenges. We agree with the district court that when the parties agreed to the first-to-file clause they took the law as it has developed since the Supreme Court's 1952 decision in *Kerotest*.

The judgment of the district court is affirmed.

*So ordered.*